No. 31,087.

Albert Beltz, *Appellee*, v. Stuart M. Griggs, Trustee of the Star Royalty Association of Oklahoma, Harry M. Crowe, The Home Stake Royalty Corporation, J. A. Ingram, The Sun Royalty Company, John T. Gibson, Elizabeth M. Gibson, Sunray Oil Company and C. H. Wright, as Receiver, etc., *Appellants*.

(20 P. 2d 510.)

Opinion filed April 8, 1933.

*W. R. Holmes, Mark H. Adams* and *Howard L. Baker,* all of Wichita, for the appellants.

*O. A. Wilson,* of Jetmore, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an action by a landowner against a common-law trust to which he had conveyed an undivided one-half interest in the oil, gas and mineral royalty in a quarter section of land in Ness county, Kansas, and the grantees of the common-law trust, to quiet his title against them, for the reason that the conveyance had been procured from him by misrepresentations and

fraud and without consideration, and the subsequent conveyances were executed contrary to law and accepted and recorded by the grantees with full knowledge of the fraud and want of authority, and that they are void and constitute a cloud on his title.

The common-law trust did not appear or defend, but its grantees did appear and answer. Their answers are separate, but are all substantially alike, in that they deny generally and specially all the allegations of the petition and allege that they paid a valuable consideration for the portion of the royalty purchased by each of them separately, and that they, in making the purchase, relied upon the representations of the plaintiff's conveyance to the common-law trust, the Star Royalty Association of Oklahoma, as recorded in Ness county, Kansas, it being a general warranty deed in character and reciting a valuable consideration, and the plaintiff was thereby estopped as against these grantees, innocent purchasers for a valuable consideration without notice, to deny the validity of his conveyance.

There were a few depositions filed, but the evidence was mainly in a very lengthy stipulation setting out the history of the entire transaction, quite in detail, and facts relied upon by both parties. The pertinent parts of the stipulation are as follows:

"Third: That on or about February 19, 1929, the said plaintiffs herein, for and in consideration of thirty-two hundred beneficial units in Star Royalty Association, of Oklahoma, on which the first dividend of eighty dollars ($80) was at that time in cash paid to plaintiff, made, executed, acknowledged and delivered to Star Royalty Association of Oklahoma an instrument consisting of two pages, each page of which was so executed, the first page of which was designated memorandum, a true copy of which is attached hereto, marked 'exhibit B-1' and made a part hereof; the second page of which was designated 'mineral grant,' a true copy of which is attached hereto marked 'exhibit B-2' and made a part hereof. That at the time of the execution of said pages, plaintiff believed the second sheet to be a copy of the first sheet; that the two sheets were joined together by perforation; that the original of said second sheet designated as 'mineral grant' was duly filed for record, and recorded in book 8, miscellaneous page 378, in the office of the register of deeds of Ness county, Kansas. That the first sheet designated as 'memorandum' was not recorded, and never was, within the knowledge of these stipulated defendants, until the date of the trial of this action.

"Fourth: That the plaintiff herein executed and delivered the mineral conveyance hereinbefore mentioned as exhibit B, relying upon certain false representations made to him by Star Royalty Association of Oklahoma through its trustee, as follows:

"(*a*) That both the trustee and Star Royalty Association of Oklahoma were authorized and empowered to transact business in the state of Kansas, and to sell shares of stock and beneficial interests therein.

"(*b*) That said trustee, representing said association, was forming a pool of landowners in Kansas, Oklahoma and Texas, for the purpose of owning and developing oil and gas interests in said states.

"(*c*) That said association was a live and going concern and had sufficient assets to pay the holders of beneficial interests dividends upon the certificates issued to them in the sum of fifty cents per acre every three months for one-half of the royalty interests in each acre of land transferred to said trustee.

"(*d*) That the said trustee was taking pooling contracts from landowners for a period of twenty years, and that during such time the landowners transferring their royalty interests to him would receive not less than fifty cents per acre every three months for one-half of the royalty interest in each acre.

"Fifth: That thereafter, the following parties defendant for the following valuable consideration, relying upon the conveyance of plaintiff and plaintiff's wife to Star Royalty Association of Oklahoma, exhibit B-2, and upon the public records of title to real property in Ness county, Kansas, which showed each of said defendants grantors, either immediate or remote, to be the owner of the interest so conveyed to said defendants, and upon verbal assurance of Stuart M. Griggs, sole trustee of Star Royalty Association of Oklahoma, that said mineral interest as evidenced by said exhibit B-2 was obtained for a cash consideration only, and said defendants being without any notice of any infirmities of title of Star Royalty Association of Oklahoma, are by purchase from Star Royalty Association of Oklahoma, through its sole trustee, Stuart M. Griggs, or its grantee or grantees, the record title holder thereof of the following interests in and to all of the oil, gas and other minerals lying in and under, or produced and saved from the real property hereinbefore described, to wit:" (Here follows the names of the defendant grantees of separate interests, with the amount of consideration paid by each.)

"Seventh: That this action was instituted in the district court of Ness county, Kansas, on the first day of September, 1930, and the service of process in said action upon defendants was the first notice to said defendants herein stipulating, of either any alleged infirmities in the title of their grantor, either immediate or remote, Star Royalty Association of Oklahoma, or that plaintiff's conveyance to said association, exhibit B-2, was given for any other than for a money consideration."

To the stipulation were attached a full and complete copy of the declaration of trust, with resignation of one of the two trustees named therein and the acceptance of such resignation and assuming of full responsibility by remaining trustee, filed with the register of deeds of Ness county, January 14, 1929; also, a full copy of the mineral deed from plaintiff and wife to the Star Royalty Associa-

tion, the common-law trust, executed and acknowledged on February 19, 1929, and filed with the register of deeds of Ness county the same day; also, a copy of the deed from the Star Royalty Association to Harry M. Crowe for an undivided three-eighths interest in this royalty, executed for the association by Stuart M. Griggs, its trustee, and filed with the register of deeds of Ness county, and a similar deed to the Sun Royalty Company of Tulsa, Okla., of a one-eighth interest; also, deeds from Crowe to other defendant grantees of undivided fractional interests of the three-eighths interest conveyed to him; also, a full copy of the memorandum contract between plaintiff and the Star Royalty Association, which was executed the same day as plaintiff's deed was executed, but the contract was not filed until about the time of bringing this action.

The trial court found generally for the plaintiff and quieted his title to the land and barred the defendants from asserting or claiming any right, title or interest therein. From this judgment the defendants appeal, urging, first, that they are *bona fide* purchasers for value, without notice of any infirmities in the title of their grantors, and even if the plaintiff might have parted with his title through a fraud practiced upon him, that will not prevent innocent purchasers for value without notice of such fraud from acquiring good titles. Appellants also urge, in response to the contention of the appellee that the conveyance of the plaintiff and wife to the common-law trust was in violation of the blue-sky laws of Kansas, that if it were invalid for that reason it would only make the conveyance invalid as between the parties to the conveyance and would not extend to innocent purchasers for value without notice. The third point urged by appellants is, that from all the facts set forth in the stipulation as to the execution of the deed by plaintiff and his wife the deed is valid and not a forgery. It appears that all the facts that were before the trial court were contained in the depositions, the stipulation and the exhibits thereto attached. These three points urged by the appellants as grounds for reversal have been ably briefed by both parties.

About the time of the filing of the appellants' brief a decision was rendered in the case of *Moos v. Landowners Oil Ass'n*, 136 Kan. 424, 15 P. 2d 1073, involving a state of facts almost identical with those in the case at bar and in which the law points involved were practically the same, and it was there held:

"In an action by a landowner, who had leased his land for oil and gas purposes, to cancel a conveyance whereby he pooled one-half of his royalty, it is held: (1) The conveyance was not invalid as unconscionable or intrinsically fraudulent. (2) The conveyance was invalid as between the parties, because the grantee had not procured a blue-sky permit. (3) Purchasers from the grantee for value and without notice were not required to know, at their peril, whether the grantee had a blue-sky permit, and cancellation of the conveyance as between the parties to it does not affect the title of the purchasers." (Syl.)

The arguments made and the authorities cited in both cases are very similar, and it would not serve any good purpose to reconsider them here. We adhere to the conclusion there reached.

Appellee cites this recent decision in the conclusion of his carefully prepared brief and logically undertakes to distinguish between the two cases, calling attention in the first place to the fact that in the Moos case the conveyance was made to a regular corporation instead of a common-law trust as in this case. Both are qualified to purchase and convey real property, and several times recently the privileges and liabilities of common-law trusts and their shareholders have been considered and defined in this court. (*Lumber Co. v. State Charter Board,* 107 Kan. 153, 190 Pac. 601; *Hamilton v. Young,* 116 Kan. 128, 225 Pac. 1045; *Weber Engine Co. v. Alter,* 120 Kan. 557, 245 Pac. 143; *Linn v. Houston,* 123 Kan. 409, 255 Pac. 1105; and *Weber Engine Co. v. Barley,* 123 Kan. 665, 256 Pac. 803.)

A copy of the deed to the corporation in the Moos case is attached to the opinion in that case as an exhibit. It contains very many provisions similar to those contained in the declaration of trust in this case, and in it are found the provisions as to the right to sell royalty interests, and matters concerning the expenses, profits and the distribution and handling of funds, which provisions were the basis for the claim in that case that the contract was unconscionable.

Appellee further distinguishes the cases by stating there is fraud in this case, but none in that one. There were claims of fraud in both cases, and appellee says the finding of the court generally for plaintiff in this case includes that allegation. If it does, we must then read from the findings of the trial court in the other case, as quoted in the opinion, as follows:

" 'Such probable profits with so little outlay and no probable losses, other than their investments in promoting their plans, leads strongly to the conclusion that such contract is, in itself, a fraud upon those induced to furnish the material structure for such organization, and is absolutely void.' " (*Moos v. Landowners Oil Ass'n,* supra, p. 424.)

This quotation from the trial court's findings itself answers the next claimed distinction between the two cases as to distribution of income. Appellee says in the Moos case the record was clear and showed nothing to cause a prudent man to investigate, while here the record was a warning. The deed itself in this case was a straight warranty deed in character and did not contain any of those matters in the Moos deed that made it appear to be an unconscionable contract.

Two other distinctions pointed out are afterthoughts or subsequent happenings, which certainly cannot count as real distinctions that would require the decision to be different in this case than in the other. They are that the Star Royalty Association has discontinued business, while the corporation in the Moos case was a going concern at the time of the trial; and that while both royalty companies transacted the business without obtaining blue-sky permits, the one in the Moos case later and during the progress of the trial obtained such permit, while the Star Royalty Association has never done so. We do not see in any or all of these claimed distinctions any reason for regarding this case as belonging in a different class from the Moos case, or as being subject to or controlled by a different line of rules and legal principles.

One of the points strongly pressed by the appellee in upholding the judgment rendered was the fact that the declaration of trust provided for two trustees, and the deeds conveying interests to these defendants were signed by only one trustee. We think full authority is given for resignation of a trustee and the assumption of responsibility by the other in the provisions of the declaration of trust found in sections 13 and 15, as follows:

"Transfers to title to mineral rights or other property of the association shall be executed in its name, signed by the trustees, or by one or more of said trustees, as shall be by them authorized. . . .

"The trustees may resign at any time, and appoint his or their successors. . . ."

The record shows that one of the trustees resigned and appointed and empowered the remaining one, Stuart M. Griggs, to carry out all the rights and privileges theretofore conferred on him, and this the remaining trustee, Griggs, formally accepted. Both papers were acknowledged and placed of record in Ness county before the deed was given by the plaintiff or any deeds were executed by the Star Royalty Association to any of the defendant grantees.

Appellee urges two further reasons why the purchasers taking a trust deed cannot be innocent, viz.: because the association has no general right to either buy or sell, and because a certain percentage of the profit was set apart under the declaration as compensation for the trustees. Sections 4 and 5 of the declaration of trust fully authorize and permit the trustees to buy, sell, own, hold, mortgage, operate or lease, convert any and all property of the association into money for the purpose of reinvestment, payment of debts or distribution as profits.

Appellee cites the case of *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, where a woman was guardian for a minor and she, as guardian, with the approval of the probate court, sold and conveyed the minor's interest in the land to her husband, and later she and her husband conveyed the land to a third party, and the court there held the third-party purchaser had full notice from the records that she, as guardian, violated her duty in conveying it to her husband and set the conveyance aside as to the third party. Other cases of a similar nature are cited, but there is no violation of a trust here in any of these conveyances or in the fact that, as a part of the declaration of trust, the compensation of the trustee is provided for and fixed. It is no more than the allowance of compensation to the guardian by the probate court for her services.

We adhere to the ruling announced in the Moos case, *supra*, and we observe no distinctive features or diversity of facts which would require a modification of that ruling or make it inapplicable to the facts and circumstances of this case.

The judgment is reversed, and the cause is remanded with directions to render judgment for the defendants, other than the Star Royalties Association, which association did neither appear nor appeal.

HARVEY, J., dissenting.