No. 32,119

CHRISTINA HEGE, *Appellant,* v. H. E. SUDERMAN, *Appellee.*

(51 P. 2d 23)

Opinion filed November 9, 1935.

*C. L. Foster,* of Sedgwick, for the appellant.

*Ezra Branine, Alden Branine, Fred Ice, W. H. Von der Heiden, Ashton E. Morgan* and *Clifford A. Morgan,* all of Newton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action in rescission of an executed contract for the purchase of a note and mortgage predicated on a defect in the mortgagor's title which eventually rendered the security worthless.

The pertinent and explanatory facts were these:

Plaintiff was a woman of some means, but without business experience. For many years she and her mother had been accustomed to consult defendant, H. E. Suderman, about their financial affairs, and occasionally they purchased a note and mortgage from him. He was president of the Midland National Bank at Newton and proprietor of a mortgage loan business sometimes called the Suderman Loan Company and again called the Newton Finance & Investment Co.

On April 18, 1925, Suderman made a loan of $1,500 to one Fugate, taking his note due in three years, and as security therefor Fugate executed a mortgage on some Harvey county real estate of which he was the record title holder, but which he had theretofore sold on contract for $5,000 to one Gaedeke, $1,650 of which sum had been

paid in cash, and the balance, $3,350, was payable at the rate of $30 per month. This contract was not recorded, but Gaedeke had been let into possession, and he was in possession at the time Fugate executed the note and mortgage to Suderman. The latter was unaware of Gaedeke's interest except under the rule of constructive notice arising from Gaedeke's possession.

On September 11, 1925, Suderman sold and assigned the Fugate note and mortgage to this plaintiff, indorsing both instruments "without recourse."

The interest on the Fugate note and mortgage. was paid semiannually at the Midland National Bank; and when the note matured, in 1928, a three-years extension agreement was effected between plaintiff and Fugate through the agency of defendant. Meantime the entire balance due in monthly payments from Gaedeke to Fugate had been paid in full, and Gaedeke had received a deed to the property.

On October 18, 1930, Fugate paid the interest then due on the note and mortgage, but thereafter made default. Then plaintiff discovered the defective character of the mortgage security she had acquired from Suderman in 1925, and on July 15, 1932, this action against Suderman was begun.

Plaintiff's petition narrated the material facts, and contained an allegation of positive misrepresentation and actual fraud perpetrated by defendant Suderman touching the character of the mortgage security, but adding—

"That *if it should appear that defendant did not in fact know that said representations were false and that no actual fraud was intended on his part,* said representations were in fact false and in which case there was mutual mistake; that in any event defendant had knowledge of facts which should have put him on inquiry which, if pursued, would have led to full knowledge of all the facts; defendant knowing, at the date of the execution and delivery of said note and mortgage and at the time he sold said note and mortgage to plaintiff, that the mortgagors were not in possession of said real estate and that the party to whom they had sold said real estate was in possession thereof, knowledge of which facts should have put defendant on inquiry as to the ownership of said real estate, but plaintiff did not at any of said times have knowledge of any of the facts herein stated." (Italics ours.)

Plaintiff further alleged that the note and mortgage were of no value; that there was a consequent failure of consideration for the $1,500 she had paid to defendant; that she was entitled to rescission;

and she prayed judgment for $1,500 and interest thereon from October 18, 1930.

Defendant's answer contained a general denial, an admission of the sale of the note and mortgage to plaintiff "without recourse," and an allegation that plaintiff herself had constructive notice of the infirmity in the mortgage complained of in her petition from the time she acquired it in 1925. His answer also contained a specific denial of any confidential agency or fiduciary relationship existing between the parties. Later defendant filed an amendment to his answer in which he invoked the statute of limitations.

The evidence developed no material dispute of fact. Plaintiff did testify that defendant had expressly assured her that there was no infirmity in this Fugate mortgage and that she had relied thereon when she purchased it; but when her attention was called to the fact that the transaction had been consummated with defendant's son while defendant was in ill health in California she modified her testimony thus:

"I could have relied on what he (defendant) had said to me about other mortgages."

As the trial proceeded counsel for plaintiff advised the court:

"I am not relying on anything except rescission, failure of consideration and breach of that implied warranty. We ask that we be put in the same position that we occupied before this transaction.

"If there was no actual fraud, then there was a mutual mistake, so that the legal effect of invalidating the transaction would be exactly the same; there was no actual purchase and sale, because, as I say, *if there was no question of fraud on his part, which there probably wasn't, we don't know,* but if there was not, there was a mutual mistake; if he was acting honestly and he thought he was selling her a good and valid note secured by a first mortgage on the real estate and she thought that is what she purchased, it was a mutual mistake and it turns out to be a nullity, which would invalidate it entirely. The transaction was a nullity and he got her money for nothing." (Italics ours.)

The trial court found that defendant had no actual knowledge of the infirmity in the mortgagor's title in 1925 when he made the loan and accepted the mortgage as security therefor; and that neither plaintiff nor defendant had actual notice of any such defect in the mortgage at the time, September 11, 1925, when defendant sold and assigned the note and mortgage to plaintiff "without recourse." The court further found that neither plaintiff nor defendant had actual notice of the infirmity in the mortgage in 1928 at the time the three-years extension agreement was executed. The

court also found that at the time the extension agreement was made in 1928, there still was a greater balance due Fugate, the mortgagor, from Gaedeke than the amount of Fugate's note and mortgage, "so that had either (party) had (actual) knowledge of Gaedeke's claims they could have protected themselves against loss."

In summarizing, the trial court found "all of the issues in favor of the defendant" and that—

"The only knowledge H. E. Suderman or his agent had of the Gaedeke agreement was the constructive notice arising from the possession and occupancy of the premises by the Gaedekes, which knowledge is equally chargeable to the plaintiff. There was no agency existing between Fugate and Suderman, so that Suderman could be chargeable with the knowledge of the existence of the agreement had by Fugate."

The court's conclusions of law, in part, read:

"However, assuming, without deciding, that Suderman was charged with the duty of informing the plaintiff that the mortgaged premises were occupied by the Gaedekes, that he was charged with the duty of inquiring about, and taking notice of the rights of those who were in the open and notorious possession of such real estate, and that he was also charged with the duty of then informing the plaintiff of what rights the occupants had or claimed to have; yet was not this open and notorious possession just as much notice to the plaintiff as it was to the defendant and the rest of the world? . . .

"The statute of limitations commences to run from the discovery of the fraud. This constructive fraud was 'constructively' discovered by the plaintiff at the time the assignment was made, seven years before the filing of this action. Hence the action is barred by the statute of limitations."

Judgment was entered for defendant, and plaintiff appeals.

The first point argued in plaintiff's brief is whether the false representation that the mortgage was a first mortgage and good security was one of fact and fraudulent. But that question went entirely out of the case through failure of proof, by concession of plaintiff's counsel, and by the trial court's findings of fact. Plaintiff's petition did allege that the mortgage purported to be a first mortgage lien on the property and the answer admitted that plaintiff purchased the "described mortgage" which can be construed as an admission that the mortgage was a *first* mortgage; but as that point was never in dispute and the record contains no suggestion of the existence of any other mortgage, it is of no controlling consequence that the mortgage security purported to be a first mortgage lien on the Fugate property.

The next point argued by plaintiff pertains to the alleged fiduciary relationship existing between the parties. But the trial court

found generally and specifically that no such relationship existed, which eliminates that point from this review. (*Hoover v. Hoover's Estate,* 104 Kan. 635, syl. ¶¶ 1, 4, 180 Pac. 275.)

Plaintiff next projects an argument that the subject matter of the sale was nonexistent, and that she got nothing from defendant for her $1,500, and that Suderman thereby became a trustee ex maleficio of her money and she was entitled to its return. She did acquire a note of $1,500 in the transaction, and she collected 6 percent interest on it for five or six years, notwithstanding the title to the mortgaged property given to secure payment of the note was infirm and eventually became altogether worthless. But conceding a complete failure of consideration, how can plaintiff surmount the barrier of the statute of limitations pleaded by defendant? She counters by raising the question whether defendant could invoke that statute, and, if so, what provision of it. She says that it was only raised by an amendment to the answer made without notice to plaintiff and without prior leave of court. Nevertheless the amendment was made; no motion was made to strike it; it was before the court and considered by it, and the judgment chiefly, if not altogether, rested thereon. (*Auld v. Butcher,* 22 Kan. 400.) Plaintiff wants to know what provision of the statute applies. Since plaintiff repeatedly assured the trial court that her action was predicated on rescission of the contract of purchase and sale, because of failure of consideration, and assuming for the nonce that the words "without recourse" in the assignment of the note and mortgage were of no avail as a defense to plaintiff's action, it is quite obvious that the *sixth* clause of the statute, if not the *second,* would bar the action. (R. S. 60-306.)

It is argued, however, that the statute would not begin to run until plaintiff actually discovered the defect in the mortgagor's title. It is not easy to ignore the point that plaintiff had constructive notice of the defect in the mortgagor's title when she acquired the mortgage in 1925. This has always been the rule governing the purchase of real property. (*School District v. Taylor,* 19 Kan. 287; *Greer v. Higgins,* 20 Kan. 420, syl. ¶ 4; *Stough v. Lumber Co.,* 70 Kan. 713, 716, 79 Pac. 737; *Harvester Co. v. Myers,* 86 Kan. 497, 121 Pac. 500; *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466; *Hass v. Nemeth,* 139 Kan. 252, 31 P. 2d 6.)

Should the same rule have any less potency in the purchase, sale and assignment of real-estate mortgages than in the sale of real es-

tate itself? Is not the sale and assignment of a note and mortgage, without recourse, analogous to the sale and conveyance of real estate by quitclaim deed? We find no decision in our own reports on this point, but the textbook doctrine is apparently all to one effect— that without a specific guaranty of the security the vendor of a mortgage is not liable to his assignee for any failure of title or value. Thus, in 2 Jones on Mortgages, 8th ed., the rule is stated:

"An ordinary assignment passes nothing beyond the mortgage title and the debt. . . .

" . . . But where there are no representations concerning the legality of the securities, upon an assignment of a note and mortgage, there is no implied warranty concerning the nature of the debt nor that it is free from usury. There is no implied warranty on the part of the assignor that the debt secured is collectible, or that the mortgagor is solvent. . . .

"Ordinarily an assignment does not charge the assignor with any liability to make good the mortgage debt assigned; . . .

"Ordinarily an assignment of a mortgage does not in any way warrant the title to the mortgaged property; and a court of equity cannot relieve a purchaser of a mortgage of land, the title of which proves defective, unless the seller made representations respecting the title upon which the purchaser was justified in relying." (pp. 455, 457, 458.)

In 41 C. J. 703-705 it is said:

"The assignee has no remedy against his assignor for the nonpayment of the mortgage debt, unless the assignor has covenanted to see the debt paid, as by giving a warranty or guaranty as to its payment, or by indorsing the note evidencing the debt, . . . Where the loss was due to . . . the invalidity of the mortgagor's title . . . the assignee may maintain an action against the assignor only where the latter made misrepresentations . . ."

Many cases are cited in support of the texts just quoted, among which is *Vincent & Co. v. Berry,* 46 Ia. 571, where the title to property proved to be bad and the mortgagor was not financially responsible. An assignee of the mortgage sought to hold the mortgagee on account of partial failure of consideration. But the court held that the assignee took the mortgage subject to constructive notice of the defect in the mortgagor's title. The syllabus, in part, reads:

"Equity will not relieve a person who purchases a mortgage upon real estate to which the title is defective, unless the seller has made some statement respecting the title upon which the purchaser was justified in relying." (Syl. ¶ 2.)

In the opinion the court said:

"Respecting the title, nothing was said by anybody. The defendant had

no knowledge that it was defective, and did not, therefore, conceal the defect. Whatever defect there was was apparent of record. The plaintiffs should have examined it or had it examined. A court of equity cannot relieve a person who purchases a mortgage upon real estate to which the title is defective, unless the seller has made some statement respecting the title upon which the purchaser was justified in relying." (p. 575.)

Other cases which support this rule are *Heppe v. Szczepanski,* 209 Ill. 88, 107; *Rayburn v. Davisson,* 22 Ore. 242.

In *Nally v. Long,* 71 Md. 585, 17 A. S. R. 547, it was held that in the absence of fraud parol evidence was inadmissible to prove a verbal warranty not mentioned in the written assignment of a mortgage.

In this appeal it is scarcely necessary to lay stress upon the fact that the note and mortgage were assigned to plaintiff "without recourse." The legal effect of these words was to constitute the indorser a mere assignor and subject to no liability except as an implied guarantor that the instruments were genuine, that he had good title to them, and that he was not aware of any illegality in them. (R. S. 52-409, 52-606; *Bank v. Bank,* 116 Kan. 303, 226 Pac. 999.) See, also, *Drennan v. Bunn,* 124 Ill. 175, 184; *Reynolds Mortgage Co. v. Garrett* (Tex. Civ. App.), 23 S. W. 2d, 835, 838.

It is elementary law that the right of rescission must be promptly exercised. (*Sylvester v. Lynde,* 113 Kan. 450, 215 Pac. 305; *Cleaves v. Thompson,* 122 Kan. 43, 251 Pac. 429.) Here plaintiff had almost seven years' constructive notice of the defect in the mortgage security ere she began this action, consequently it was barred by the statute of limitations.

No error appears in the record and the judgment is affirmed.

BURCH, C. J., and THIELE, J., concurring in the result.

HARVEY, J., dissenting.