No. 32,615

A. C. SAUBERLI, Receiver of THE SLEDD FARM CORPORATION, *Appellee,*
v. CHARLES M. SLEDD, *Appellant.*

(55 P. 2d 415)

Opinion filed March 7, 1936.

*L. E. Quinlan,* of Lyons, for the appellant.

*R. C. Russell,* of Great Bend, and *Ben Jones,* of Lyons, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by the receiver of a corporation to recover from defendant alleged misappropriations of money which it is claimed belonged to the corporation.

A demurrer to defendant's amended answer was sustained. From

that ruling he appeals. Review of that ruling requires analysis of the petition and amended answer. The petition contained two causes of action. The material allegations in the first cause of action contained, in substance are: On or about July 14, 1933, plaintiff was duly appointed by the judge of the district court of Rice county, a receiver for the Sledd Farm Corporation, and he is now the duly appointed, qualified and acting receiver of that corporation; defendant was one of the incorporators of the Sledd Farm Corporation, and during all of the period of its corporate existence, prior to the time of the receivership, and now is the president of that corporation and was in truth and in fact its managing and directing officer; prior to the appointment of a receiver the defendant, as managing officer and president of the corporation, conducted a stock-selling campaign for the corporation; the selling campaign was under the immediate direction and supervision of defendant, and he employed stock salesmen to sell the stock of the corporation to various parties throughout the United States.

Under and by virtue of the laws of the state of Kansas and particularly under what is known as the "blue-sky law," all salesmen of stock of a corporation are required to have permits to sell the stock; defendant did not have a permit as a stock salesman and had no right to engage in the business of selling the stock.

In April, 1928, and continuing until March 31, 1931, and at various times hereinafter set forth, the defendant unlawfully applied and converted to his own use certain sums of money, which rightfully belonged to the corporation, under the guise and pretense of commissions, which were unlawfully and illegally charged against the assets of the corporation by defendant, in the aggregate sum of $49,652; the date and amounts of misappropriations by defendant during that period are set forth in an itemized statement, attached, marked "Exhibit A" (the dates cover a period beginning with April 9, 1928, and ending March 31, 1931) ; the statement is true and correct, as shown by an audit of the books and records of the corporation made under direction of plaintiff; the amounts were not known or discovered, nor could they be known to any of the active and managing officers or stockholders of the corporation until the audit was made and completed by an auditor employed by plaintiff in his official capacity as receiver; the audit was completed and the above facts became known to the plaintiff sometime in the month of March, 1934.

The material allegations of the second cause of action in substance are:

Plaintiff makes the first cause of action a part of his second cause of action insofar as the same may be applicable, the same as though fully set forth therein, and further says: Defendant from August 12, 1929, until July 29, 1933, unlawfully and without authority from the directors and stockholders of the corporation appropriated and converted to his own use and benefit certain sums of money, belonging to the corporation, under the guise and pretense of salary, which amount defendant as managing officer and agent of the corporation paid to himself without authority, in the aggregate sum of $10,674. These amounts were appropriated on the dates and in the amounts set forth in an itemized statement made a part thereof, marked "Exhibit B"; the itemized statement is true and correct as shown by the records and books of the corporation; the amounts so appropriated as salary were not known or discovered by plaintiff until the close of an audit of the books and records of the corporation made under plaintiff's direction and completed in March, 1934.

Defendant, in answer to the first cause of action, in substance states:

Defendant admits he received the sums of money as commissions for the sale of stock of the corporation as itemized in exhibit "A" of the petition; he denies each and all of the allegations of the petition, except such as are specifically admitted in his answer. The answer further alleges:

He had been the president and general manager of The Chas. M. Sledd Wholesale Mercantile Company of Lyons, for a number of years prior to the time of the stock-selling campaign referred to in plaintiff's petition; because of defendant's competent management and operation of the mercantile company during that time, large dividends were paid to the stockholders of that company, residing in the following states (here are listed neighboring states, and others, including a total of 31); by reason thereof defendant's reputation as a successful business man became known throughout the United States; when the stock-selling campaign was launched, the success of the enterprise was due almost wholly to the confidence investors throughout the United States had in defendant's integrity and ability; before entering upon the stock-selling campaign, defendant presented the whole plan, including his retention of five (5) percent of the total sales of stock as his commission,

to the bank commissioner of the state of Kansas, the charter board of the state of Kansas, and the board of directors and stockholders of the Sledd Farm Corporation; the commissions were in fact taken with the full knowledge, consent and approval of the bank commissioner, charter board, board of directors and stockholders; defendant directed and supervised the stock-selling campaign, and otherwise used his influence and reputation to the extent that the same was a complete success; by reason of all of which defendant says the money he received from the corporation, in the way of commissions, was a fair and reasonable compensation for his services, and that he earned the same.

The money received by him as commissions was received with the full knowledge, consent and approval of the bank commissioner, and charter board of the state of Kansas, the board of directors and stockholders of the corporation, at the time the money was received; each item of exhibit "A" was received on the days and dates itemized therein; each of said items were entered upon the books of the corporation on the exact days and dates they were received by defendant; defendant did nothing to in any manner conceal from the board of directors, stockholders or any other interested persons, the dates and amounts of money he received from the corporation; by reason thereof the cause of action on each item of exhibit "A" is barred, the action not having been commenced within the time prescribed by the statute of the state of Kansas.

For answer to the second cause of action defendant states: Defendant makes each and all of the allegations of his amended answer to the first cause of action of plaintiff's petition, a part of his amended answer to plaintiff's second cause of action; defendant admits he received from the corporation the sums of money, and on the dates, set out in exhibit "B" of plaintiff's petition as a salary for his services as president of the corporation; he denies each and every allegation in the second cause of action contained except such as are specifically admitted in his answer.

The corporation was organized in the year 1925, and defendant has been the president thereof since its organization; he received no pay or remuneration for his services to the company from the date of its incorporation until August 12, 1929; defendant has had a wide experience as a farmer and business man, and was at all times familiar with, and understood the business of corporation farming, and especially the farming of large tracts of land in the

state of Kansas; the money he received as salary for services as president of the corporation, as set out in exhibit "B," was received with the full knowledge, consent and approval of the board of directors and stockholders of the corporation; since the organization of the corporation he has given a large portion of his time to the management and control of the same; the sums he received as salary are less than a fair and reasonable compensation for services rendered as president of the corporation.

Plaintiff's demurrer was on the ground the amended answer failed to state facts sufficient to constitute a defense to the petition or either cause of action.

The trial court sustained the demurrer on the grounds: the answer virtually conceded defendant had no permit to sell speculative securities and such sale was illegal (R. S. 1933 Supp. 17-1228, sub-div. 17, and previous acts); the law prohibited granting of a permit for the sale of such securities, where the sale is on a commission basis or for a consideration, by an officer or director of the company guaranteeing the same (R. S. 1933 Supp. 17-1229, sub-div. 8, and previous acts), and the sale therefore was void; the statute of limitations did not run against the receiver; and that defendant, an officer of the corporation, could not retain a salary on the principle of implied contract.

That the securities were speculative and that defendant had no permit, is virtually conceded.

The sale of securities in violation of the provisions of the securities act was not void, but voidable, at the election of the purchaser. That fundamental distinction has been the basis of former decisions of this court. (*Moos v. Landowners Oil Ass'n,* 136 Kan. 424, 15 P. 2d 1073; *Beltz v. Griggs,* 137 Kan. 429, 20 P. 2d 510.) See, also, *Westerlund v. Black Bear Mining Co.,* 203 Fed. 599.

Section 18 of chapter 140 of the Laws of 1929 reads:

"Every sale . . . in violation of any of the provisions of this act shall be voidable at the election of the purchaser . . ."

In *Westhusin v. Landowners Oil Ass'n,* post, p. 404, 55 P. 2d 406, this day decided, it was held:

"A sale of speculative securities, unlawful because the seller had not secured a permit to sell pursuant to the speculative securities act, is not void, but is voidable by the purchaser." (Syl. ¶ 1.)

In the course of the opinion reference was made to the above legislative act of 1929, and it was said:

"This provision appeared in the general revision in 1929 of the speculative securities act. (Laws 1929, ch. 140, § 18.) When enacted, the provision was in accord with settled existing law and was, in fact, merely declaratory of the existing law." (p. 406.)

The sales in the instant case were not void, but voidable, and they were ratified by the corporation. The corporation at no time moved to avoid the sales and return the proceeds to the purchasers. In the sale of the stock the corporation was the principal, and defendant was merely its agent. The stock was that of the corporation. It received the money and retained ninety-five percent of the benefits. It was presumed to know the law. It therefore knew that defendant as president of the corporation could not obtain a permit to sell speculative securities on a commission basis. It follows the corporation knew its sales of stock were invalid. Instead of returning the proceeds to the purchasers, it consented not only to the sales, but to the commissions, after full disclosure of the amount defendant was to receive. It approved the payment of commissions. It appropriated ninety-five percent of the proceeds from the sales, to the purposes of the corporation. The corporation having enjoyed the benefits of this ninety-five percent, realized as the result of defendant's efforts, now insists upon recovering from defendant, for the corporation, the remaining five percent. This amount the answer alleges it consented he should have and approved. It is therefore clear the corporation accepted the benefits of defendant's services and ratified the commission he received. In the case of *Fitch v. United Royalty Co.*, post, p. 486, 55 P. 2d 409, this day decided, numerous decisions of this court, dealing with the effect of sales of speculative securities without a permit, are cited. In that case plaintiff had conveyed a royalty interest in exchange for speculative securities, for the issuance of which no permit had been granted. He had received dividends or profits from the venture. It was held he had ratified the sales which were merely malum prohibitum, not malum in se, and that plaintiff could not recover.

The receiver contends he also represents stockholders and creditors. The petition contains no mention of either, but asks the amount be recovered for the corporation. If, however, the commissions are to be used to pay debts of the corporation, that is additional approval of the sales by plaintiff, and an attempt to use the remainder of the proceeds for the benefit of the corporation.

Only after expenses of liquidation are paid and all balances struck, might a part of the purchase price of the stock ultimately filter through to stockholders. It is obvious this action was brought for the benefit of the corporate entity and is not governed by principles applicable to a suit for rescission by a purchaser of speculative securities, where the seller had no permit, as was the case in *Daniels v. Craiglow*, 131 Kan. 500, 292 Pac. 771, relied on by the trial court. Nor are other decisions of this court, where no element of ratification was involved, applicable to the instant case.

Coming now to the question of the statute of limitations, it is clear that statute is of no consequence if the commissions were in fact approved as the answer alleges. If they were approved by the corporation, there was no conversion. On demurrer to the answer, knowledge, consent and approval are admitted. The answer, therefore, stated a defense. We might properly close the opinion at this point. Since, however, the action remains to be tried and the question of limitations has been raised, and may become important, we shall dispose of it now.

The trial court held the fact the withdrawals were recorded in the books of the corporation did not cause the statute of limitations to run against the receiver. This was on the theory the statute did not become operative until the receiver had notice, provided he acted with diligence in the discovery of the conversion. That position cannot be sustained. On that theory an action by a receiver, based on conversion fifty years prior to his appointment, would not be barred.

In the event funds were converted, an action to recover must be brought within the statutory period. The two-year statute of limitations had run on all items contained in the first cause of action and on many contained in the second cause of action. (R. S. 60-306, *third*.) The latest act of conversion alleged in the first cause of action was March 31, 1931. The action was commenced May 14, 1934, over three years from the date of the last item withdrawn. The petition states the receiver was not appointed until July 14, 1933, and that he did not discover the conversion until he procured *an audit of the books and records of the corporation* in March, 1934. It clearly appears from the petition, therefore, the receiver obtained his information, concerning the alleged conversions, not from some extrinsic source, but from the books and records of the corporation itself. The petition contains no charge of concealment by ingenious

bookkeeping or otherwise, and it would be of no avail if it did. Our statutes do not make concealment one of the grounds for tolling the statute of limitations. (*State, ex rel., v. McKay*, 140 Kan. 276, 280, 36 P. 2d 327.) The petition simply states the *amounts* were not known or discovered and could not be known until the audit was completed. The answer expressly admits the dates and amounts received by defendant as alleged by plaintiff. It states the entries were made on the exact dates the amounts were received. No collusion on the part of defendant and other members of the board of directors is alleged. The board—the governing body of the corporation—therefore, had access to the open records from the date of the first withdrawal in April, 1928, until the appointment of the receiver in July, 1933.

The petition is based on conversion. The receiver here argues the conversion as fraud. Discovery of fraud under R. S. 60-306, *third,* means discovery of such facts as would, on reasonably diligent investigation, lead to knowledge of the fraud. (*City of Coffeyville v. Metcalf*, 134 Kan. 361, 5 P. 2d 807; *Bluff City v. Western Light & Power Corp.*, 137 Kan. 169, 19 P. 2d 478, and cases therein cited.) The answer states that before defendant drew any commissions, he presented the whole plan, including his commissions, to the board of directors. The petition contains no allegation indicating the *amounts* defendant withdrew could not have been ascertained with reasonable diligence when they were drawn, as well as when the audit was made.

The *last item of commission* under the first cause of action stated was drawn on March 31, 1931, two years and approximately four months before the appointment of the receiver and over three years before commencement of this action.

While this action is clearly brought on behalf of the corporate entity, the receiver argues he also represents the stockholders. Certainly it cannot be seriously contended the rights of the receiver, if he were in fact bringing the action in their behalf, could rise to a higher level than the rights of the stockholders themselves. Their cause of action is barred. In *Fitch v. United Royalty Co.*, supra, this court said:

"Even granting that the transaction between plaintiff and the United Royalty Company in 1928 was fraudulent because of the mere want of a blue-sky permit, plaintiff's action for relief on the ground of fraud could not be commenced after two years measured from the time the plaintiff learned, or readily could have learned, that the 1337 units he had gotten for his royalty

interest had been issued without the sanction of the blue-sky department. (*Hege v. Suderman*, 142 Kan. 495, 51 P. 2d 23, and citations.)" (p. 494.)

The first cause of action was clearly barred.

The second cause of action is for recovery of amounts alleged to have been drawn as salary. The items were drawn over a period from August 12, 1929, to July 29, 1933, inclusive, a period of approximately four years. This action was filed May 14, 1934. The answer admits the salary items were drawn on the dates set out in the petition. The receiver also obtained these items from the records of the corporation. What was said relative to lack of diligence in ascertaining the amounts as to the first cause of action, applies to this cause of action. An action to recover salary more than two years prior to May 14, 1934, is barred. This includes the first ten items of exhibit "B," drawn between August 12, 1929, and April 18, 1932, inclusive. This leaves the remaining salary items. The answer states and the demurrer admits the salary was approved. Then it was not unlawfully converted.

The receiver contends an officer of a corporation can recover salary only on an express agreement and not on an implied contract. That contention does not meet the admission that the salary defendant drew was approved. In support of the receiver's contention, we are referred to *Trust Co. v. Robinson*, 89 Kan. 842, 132 Pac. 979; *Telephone Co. v. Cory*, 117 Kan. 463, 232 Pac. 609; 14a C. J. 136. These citations are not authority for the right of a corporation to recover amounts a board of directors had, with full knowledge, consented the defendant should receive and which amounts they approved. In this connection see 14a C. J. 136, 138, and cases cited.

. While the second cause of action does not definitely distinguish between services rendered by defendant, as president, and those rendered as manager of the corporation, it would appear defendant was probably relying also, at least in part, upon the fact he rendered services unusual to those of his official capacity as president. The answer alleges he spent a large portion of his time in the actual management and control of the corporation. The petition alleges he was in truth and in fact its managing and directing officer.

In the Telephone company case, *supra*, relied on by the receiver, this court in part held:

"Where a defendant in an action to recover moneys of a corporation had and received by him admitted that he was a director of the corporation, admitted that he was its secretary-treasurer and in charge of its funds, and admitted having received the money, but defended on the ground that the money was received by him as an official salary and as compensation for special

services performed, the burden of proof was on defendant to prove that he had a valid contract for compensation, *or that the services were unusual and performed with the knowledge of the board of directors, under such circumstances that an obligation to pay compensation was fairly to be implied.*" (Syl. ¶ 4.) (Italics inserted.)

In the light of what has been said, it is deemed unnecessary to discuss other contentions urged by the receiver. We hold the amended answer states a defense to each cause of action pleaded. The ruling sustaining the demurrer must therefore be reversed. It is so ordered.