No. 34,000

DeWitt C. Terrill and Lydia Terrill, His Wife; *Appellants,*
v. (Edgar J. Hoyt et al.) The Home Royalty Association,
*Appellee.*

(87 P. 2d 238)

Opinion filed January 28, 1939.

*G. L. Light* and *Auburn G. Light,* both of Liberal, for the appellants.

*Ezra Branine, Alden E. Branine, Fred Ice,* all of Newton, *Eugene O. Monnett* and *Royce H. Savage,* both of Tulsa, Okla., for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action to cancel a mineral deed and to quiet title. Judgment went for the defendant, Home Royalty Association, Inc., and plaintiffs have appealed.

Other parties were joined as defendants but have not appealed,

and their interest, if any, is of no present concern. The action was tried by the court upon stipulated facts, the pertinent portion thereof being in substance as follows:

The mineral deed in question had been executed and was delivered by Charley L. Rand, the landowner, on June 15, 1929, in exchange for a "certificate for beneficial interests" in The Home Royalty Association of Oklahoma, a trust estate. The certificate was of the face value of $480. The certificate was delivered to Rand on June 17, 1929. The mineral deed covered an equal undivided one-half interest in the oil and gas in place under 480 acres of land in Seward county, together with the right of ingress and egress for twenty-one years. That deed was recorded in the office of the register of deeds of Seward county July 18, 1929. On November 29, 1929, the trust estate conveyed its mineral interests to the present defendant, the Home Royalty Association, Inc. The present defendant had knowledge of the circumstances under which the conveyance was obtained from Charley L. Rand, and it now is the holder and owner of such deed. The conveyance to the present defendant was recorded in the office of the register of deeds of Seward county, January 31, 1930. This action was commenced July 28, 1937. Charley L. Rand died intestate January 17, 1930. His estate was administered and the certificate became the property of his heirs and in 1937 the property of these plaintiffs by assignment. It was an unregistered security. In 1937 plaintiffs also became the owners of the land by warranty deeds and quitclaim deeds from the heirs. The deeds contained no exceptions. Plaintiffs had no *actual* knowledge of the claims of the defendant at the time they acquired the deeds. The deeds were obtained by them for good and valuable consideration. The defendant corporation was duly organized under and by virtue of the laws of the state of Delaware on November 26, 1929. The trust estate, the grantee of the mineral deed, had at no time received a permit or license to sell, trade or deal in its securities under the speculative securities act of this state. Since July 10, 1930, the defendant at all times has had a duly authorized service agent in the state of Kansas upon whom service of process might be had in all actions brought against it in this state. Plaintiffs are the owners in fee simple and in the quiet and peaceful possession of the land, subject, of course, to the rights and claims of the defendant, but they do not admit the validity of defendant's claim.

While there is some dispute among the parties as to whether the instant action was instituted under the general quiet-title statute (G. S. 1935, 60-1801), or under the provisions of chapter 177 of the Laws of 1937, which specifically provides for actions of this character growing out of the exchange of mineral conveyances for speculative securities without a license or permit, we deem such dispute as rather immaterial in view of the issues joined by the pleadings. Under those issues as finally joined, defendant claimed its rights under the mineral deed executed by the landowner and now held by it under a conveyance from the original grantee. Those conveyances had all been placed of record in June, 1929, and January, 1930, and clouded plaintiffs' title. Plaintiffs desired to remove the cloud and quiet their title. In order to obtain such a decree it was necessary those recorded deeds be canceled and set aside. If canceled their title was clear. The substance of the quiet-title action, under the issues and the stipulation, therefore became essentially an action to cancel and set aside the mineral deed.

Appellants contend the mineral deed executed by the grantor in June of 1929 was void and the action was not barred, although not commenced until June 28, 1937. They concede the speculative securities act of 1929 expressly provided that sales of so-called speculative securities without a permit or license were merely voidable and not void. They concede the statute of limitations under the 1929 speculative securities act was two years and under the 1935 act it was three years. They also recognize that in the case of *Hoffman v. Home Royalty Ass'n,* 146 Kan. 279, 69 P. 2d 741, we held the three-year statute under the 1935 act was applicable. They concede that if the limitation in the 1929 act or the 1935 act is controlling in the instant case, the action was barred, as the mineral deed had been executed and delivered over eight years prior to the commencement of this action. They contend, however, that the mineral deed of June 15, 1929, was executed and delivered prior to the effective date of the 1929 act, the effective date of which act was July 1, 1929, and that the law prior to July 1, 1929, rendered such deeds void and not merely voidable. They are correct as to the effective date of the 1929 act. (*Westhusin v. Landowners Oil Ass'n,* 143 Kan. 404, 406, 52 P. 2d 406.) As authority for the contention the deed was void they rely principally upon our early decision in *Wigington v. Mid-Continent Royalty Co.,* 130 Kan. 785, 288 Pac. 749, and cases therein cited. Since that decision, however, this

court has .repeatedly held sales of such securities without a permit were not void but voidable only. (*Sauberli v. Sledd,* 143 Kan. 350, 354, 55 P. 2d 415; *Westhusin v. Landowners Oil Ass'n,* supra; *Fitch v. United Royalty Co.,* 143 Kan. 486, 493, 55 P. 2d 409; *Groves v. Home Royalty Ass'n,* 145 Kan. 752, 758, 68 P. 2d 19; *Hoffman v. Home Royalty Ass'n,* 146 Kan. 279, 69 P. 2d 741.) It should be noted that in each of those cases conveyances declared merely voidable and not void were executed and delivered before the 1929 act became effective. Moreover, it has been expressly held that the 1929 act which declared such sales merely voidable was only in accord with the settled existing law on the subject and was in fact merely declaratory of the existing law. (*Westhusin v. Landowners Oil Ass'n,* supra, and *Sauberli v. Sledd,* supra.) In *Fitch v. United Royalty Co.,* supra, which was decided on the same day as the Sauberli and Westhusin cases, namely, March 7, 1936, it was said such sales without a permit were not *malum in se* but only *malum prohibitum,* and hence capable of being ratified. It therefore follows the instant transaction, executed prior to the 1929 act, was not void but voidable only.

Appellants, however, urge section 28 (2), chapter 140, of the 1929 speculative securities act, was not discussed in our former opinions in which it was held the transactions were voidable only. That section provides:

"(2) In case of sales, contracts or agreements made prior to the effective date of this act the civil rights and liabilities of the parties thereto shall remain as provided by the law as it existed at the time such sales, contracts or agreements were made, and all parts of laws repealed by this act shall remain in force for the enforcement of such rights and liabilities."

Since transactions such as the instant one were actually voidable only and not void prior to the 1929 act, the above provision cannot alter our former pronouncements on that subject.

Appellants also urge the court erred when it applied the special three-year statute of limitations contained in the 1935 act, in the Hoffman case, *supra.* They insist the special statutes of limitation contained in the 1929 and the 1935 acts were not intended to be exclusive but cumulative and that these acts were not intended to deprive plaintiffs of their right to maintain a quiet-title action under the general quiet-title statute, G. S. 1935, 60-1801. The last-mentioned statute is not a statute of limitations. In support of the contention that the special statutes of limitation contained in the 1929 and 1935 speculative securities acts were not intended to be ex-

clusive but cumulative, they directed our attention to section 25, chapter 140, of the 1929 act, to wit: G. S. 1935, 17-1247, which reads:

"Nothing in this act shall limit any statutory or common-law right of any person to bring any action in any court for any act involved in the sale of securities, or the right of the state to punish any person for any violation of any law."

Under section 18, chapter 140, Laws of 1929, the limitation specifically prescribed for an action to recover the purchase price was two years, and in the 1935 act it was three years. (G. S. 1935, 17-1240.) It is true the various provisions of an act must be considered together with the view of interpreting legislative intent. They also, however, must be so construed as to result in consistency rather than inconsistency, if it is reasonably possible to so construe them. Where statutes are open to two interpretations the one which will uphold rather than the one which would invalidate its provisions should be adopted. (*International Mortgage Trust Co. v. Henry,* 139 Kan. 154, 165, 30 P. 2d 311, and cases therein cited.) It will be noted section 25, chapter 140, of the 1929 act (and the same provision in the 1935 act) at least did not specifically say an action might be brought *at any time* within which it might have been brought previously. If construed to mean an action could have been so brought, then the special two-year limitation in the 1929 act and the special three-year limitation in the 1935 act become utterly meaningless. Such special limitations were not contained in the previous speculative securities act, and it must be assumed the legislature intended to fix a special limitation for actions of this character. Otherwise such limitation provisions were useless gestures. We think when the special limitation in the 1929 and 1935 acts are considered together with section 25, chapter 140, Laws of 1929, to wit, G. S. 1935, 17-1247, it is clear the legislature intended by the last-mentioned provision that the purchaser of speculative securities should not be limited in bringing any *kind of action in any court for any act involved in the sale of securities which he previously could have maintained, and not* that it intended he could bring such action *at any time* he previously could have done so. If so interpreted the respective provisions are in harmony and may be upheld. We therefore conclude, as we have in the past, it was the legislative intent that the special limitations prescribed in the 1929 and in the 1935 acts should control. It follows the bar to the in-

stant action had fallen under both the 1929 and the 1935 acts before the 1937 act, which prescribes a fifteen-year limitation for the recovery of the purchase price where such purchase price of speculative securities consists in a royalty or mineral interest in land, became effective.

Appellants rely upon *Cooper v. Rhea,* 82 Kan. 109, 107 Pac. 799; *Harris v. Defenbaugh,* 82 Kan. 765, 109 Pac. 681; *Jones v. Hammond,* 118 Kan. 479, 235 Pac. 857. Those cases were cited in the dissenting opinion in the Hoffman case. They were considered by this court before the decision in the Hoffman case was announced. None of them is a case involving any speculative securities act. No special statute of limitations contained in any legislative act upon which the rights of the parties depended was involved in either of the first two cases cited. In the last case plaintiff's right to remove the cloud and to quiet title fifteen years after the mortgage had been in default was based on a special quiet-title statute applicable to the particular controversy. (R. S. 60-1802.) True, the Jones case also dealt with the question of plaintiff's right to quiet his title by reason of laches. This court said, "The existence of the cloud is a continuing invasion of the plaintiff's rights, and relief to one in possession is not barred by the *lapse of time.*" (p. 481.) (Italics inserted.) The defense in the Hoffman case, *supra,* was not based upon mere lapse of time but upon a special three-year limitation statute contained in the 1935 speculative securities act. That special limitation statute was enacted for the express purpose of barring actions to set aside transactions which were declared voidable in the same act. The identical defense which was made in the Hoffman case is made in the instant case, namely, that the special statute of limitation was applicable. The defense was good there and it is good here. The transaction between the parties was valid until disaffirmed. (*Westhusin v. Landowners Oil Ass'n,* supra, p. 408.) The mineral deed was not disaffirmed within the time prescribed and defendant's rights thereunder had vested long before the instant action was commenced.

Appellants further urge section 1, chapter 177, Laws of 1937, provides an action for the recovery of the purchase price where the purchase price of the speculative security is a royalty or mineral interest in the land, and the sale of such securities is unauthorized under the act, may be brought within fifteen years. They contend the 1937 act constitutes a legislative interpretation of the limitation

provisions under former acts. Assuming, without deciding, such was the legislative intent, the bar in the instant case had fallen before the 1937 act was passed, defendant's title to the interest in the land had become vested under its mineral deed, and that title could not be arbitrarily divested by a subsequent legislative act, which, if given effect, would result in the revival of the barred claim. (*Bowman et al. v. Cockrill,* 6 Kan. 311, 340; *Campbell v. Holt,* 115 U. S. 620, 29 L. Ed. 483; *Stewart v. Keyes,* 295 U. S. 403, 79 L. Ed. 1507.)

Defendant insists the transaction over the period of eight years was never disaffirmed by the grantor of the mineral deed by the administrator of his estate or by the heirs of the grantor. The evidence would appear to constitute something more than mere failure to disaffirm. It is true, the grantor did not disaffirm the mineral deed during his lifetime. He died intestate in 1930. The heirs took title to the land by inheritance. Some of them conveyed to plaintiffs by quitclaim deed and others by warranty deed. The deeds contained no exceptions. The estate of Rand was administered. The "certificate for beneficial interests" which Rand obtained in exchange for the mineral deed became a part of the assets of the decedent's estate. Upon the settlement of that estate, the "certificate for beneficial interests" passed into the hands of the heirs. The administrator nor the heirs disaffirmed the transaction. On the contrary, the heirs assigned that certificate to the plaintiffs. In the absence of any evidence to the contrary and in the absence of any showing as to the contents of the assignment, we must assume the heirs intended to convey something of value to plaintiffs and not merely a lawsuit. Their conduct, under all the circumstances, is more nearly consistent with affirmance than with disaffirmance. If the transaction was affirmed by the heirs, who in this case stood in the shoes of the grantor of the mineral deed, then, of course, the deed could not now be disaffirmed by these plaintiffs. But we need not determine whether the transaction was actually affirmed by the grantor or by his heirs. Certainly it was not disaffirmed by any of them. The speculative securities act was not passed for the benefit of plaintiffs as purchasers of land but was passed for the protection of the purchasers of speculative securities. The transaction was voidable at the election of the purchaser of the securities. (*Westhusin v. Landowners Oil Ass'n,* supra, pp. 406, 408.) See, also, section 3, chapter 73, Laws of 1923 (R. S. 1923, 17-1221). The purchaser nor his personal representative nor the heirs who

stood in the shoes of the purchaser avoided it. The heirs sold the certificate to the plaintiffs. Assuming, without deciding, that under some circumstances the original owner of the securities or his heirs could have assigned to plaintiffs the privilege of avoiding the transaction, it is clear no such assignment was made in the instant case as the privilege to avoid had expired long before plaintiffs became the owners of the securities.

It is true the so-called blue-sky law was designed to prevent fraud. (*Wigington v. Mid-Continent Royalty Co.,* supra; *Westhusin v. Landowners Oil Ass'n,* p. 405, *supra.*) Defendant contends the heirs had constructive notice of the fraud for seven years, if the sale of these securities without a permit or license constituted fraud, and this action on that theory was also barred under the two-year fraud statute. (G. S. 1935, 60-306, *Third.*) In view of what has been said herein, we do not deem it necessary to treat that subject in the instant case. The judgment must be affirmed upon other grounds previously stated. It is so ordered.