No. 34,754

THE BROWN MEMORIAL FOUNDATION, *Appellee*, v. H. W. ROHRER, *Appellant*.

(103 P. 2d 814)

Opinion filed July 6, 1940.

*Arthur Hurd* and *John M. Rugh,* both of Abilene, for the appellant.
*John H. Lehman,* of Abilene, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action on a promissory note and to foreclose a mortgage on corporate stock pledged as security for the note. The note was executed and delivered to plaintiff in consideration of the sale of so-called speculative securities. The defendant filed an answer and cross petition for money judgment. Judgment was rendered in favor of the plaintiff on its motion for judgment on the pleadings. From that ruling and judgment defendant appeals.

The verified petition was filed March 31, 1939, and in substance alleged: Plaintiff is a charitable and nonprofit corporation duly organized under and by virtue of the laws of the state of Kansas, with its principal business and post-office address at Abilene. On or about September 1, 1930, the defendant, Rohrer, made, executed and delivered his promissory note to plaintiff in the sum of $5,000, said amount being payable in 100 equal monthly installments of $50 each, beginning on the 10th day of September, 1930. If default was made in the payment of any installment or for accrued interest, then the whole amount and each unpaid installment, together with interest, should become due and payable at the election of the legal holder thereof, without notice. The note was given in consideration of 100 shares of common stock of The United Telephone and Electric Company, which shares are pledged as collateral security for the payment of the note. In order to secure the payment of the note, defendant assigned and delivered to plaintiff on September 1, 1930, stock certificate No. 188, representing 100 shares of the common capital stock of The United Telephone and Electric Company, a Delaware corporation. The stock was pledged as collateral security for the note and is held by the plaintiff (copies of note and assignment were attached). Defendant made payments on said note until April 6, 1934, as shown by credits attached to note. The balance on said note in the sum of $2,800, together with interest at ten percent per annum from April 1, 1934, is now due and payable. Plaintiff is entitled to judgment on the note and to the foreclosure of its mortgage.

The verified answer and cross petition admitted the execution and delivery of the promissory note and alleged: The note was given to plaintiff in connection with a contract for the purchase of the stock described in the petition; at the time of the transaction in question, namely, September 1, 1930, chapter 140 of the Laws of

1929 was in full force and effect; the stock was a speculative security as defined by the speculative securities act; the transaction was one of several repeated and successive sales of the same security acquired for the purpose of resale by plaintiff. The transaction took place within the state of Kansas, and was in violation of chapter 140 of the Laws of 1929 in the following respects:

"First: The plaintiff and seller of said securities was not registered as a broker or dealer in speculative securities as required by section 8 of said chapter 140. Second: The common capital stock of The United Telephone and Electric Company, a corporation, was not registered by notification or qualification with the state of Kansas as required by sections 5 and 6 of said chapter 140. Third: C. A. Scupin, who acted as the agent of the said plaintiff in effecting the sale of said securities, was not registered as the agent of said plaintiff, or as an individual broker or dealer in speculative securities as provided by section 11 of said chapter 140. Fourth: The advertising matter containing the offer to sell the said securities, published and distributed by said plaintiff, was not issued in conformity with the provisions of section 19 of said chapter 140."

The answer further alleged that section 18 of chapter 140 of the Laws of 1929 provided:

"Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser,"

and that the defendant elects to declare the contract of sale void by reason of the violations of the securities law.

The counterclaim was, in substance, as follows: By reason of the fraud and deception practiced by plaintiff upon defendant in connection with the sale of the speculative securities, which fraud and deception remained undiscovered by defendant until after February 20, 1939, the defendant made the payments of money on the note as described in plaintiff's petition; the fraud consisted in making an illegal offer to sell and in the making of an illegal contract of sale, or attempted sale of the speculative securities; the stock was unregistered in the office of the bank commissioner, and was made through an unregistered agent; plaintiff was unregistered as a broker or dealer in speculative securities and all of said acts were in violation of chapter 140 of the Laws of 1929; plaintiff perpetrated the fraud upon defendant by representing, through its agents, that the purported sale was a bona fide transfer and assignment of all of plaintiff's rights of ownership in the securities when in fact the securities were a part of the capital assets of the plaintiff corporation; the provisions of the charter of the corporation relating to the sale

of corporate assets had not been complied with so as to vest an indefeasible title to the securities in the purchaser thereof; plaintiff had knowledge of the violation of its charter, but fraudulently concealed the information from the defendant; the defendant did not discover the violations of plaintiff's charter until after February 20, 1939.

The counterclaim admitted the stock was pledged as collateral security on September 1, 1930, and further alleged: The stock was in the possession of plaintiff and for that reason it was impossible and unnecessary for defendant to tender back the securities before prosecuting the counterclaim; defendant had received dividends from the securities in the sum of $850; the amount of the dividends should be deducted from the amount paid by the defendant on the note, leaving a balance of $1,350, with interest from the 5th day of May, 1933, due and payable to the plaintiff. (Charter of plaintiff corporation was attached, which disclosed charter was filed November 17, 1926.)

The real issue presented is whether the purchaser of so-called speculative securities can make payments on his purchase note in the sum of $2,200 and accept dividends on the stock in the sum of $850 and, after eight years and seven months from the date of the transaction, avoid the transaction on the ground the securities were not sold in conformity with the provisions of plaintiff's charter and the speculative securities law.

Certain principles involved in the instant case are well established in this state. Concerning them we need not consider decisions from other jurisdictions, although based upon statutes similar to our own. Nor will it be helpful to consider decisions based upon statutes which declare that sales of speculative securities are void unless the seller has complied with the speculative securities act. The parties concede our 1929 act was in effect when the instant transaction was consummated. Under the 1929 act and subsequent acts a sale of securities, in violation of the securities act, is not void but voidable only at the election of the purchaser. (*Moos v. Landowners Oil Ass'n,* 136 Kan. 424, 15 P. 2d 1073; *Beltz v. Griggs,* 137 Kan. 429, 20 P. 2d 510; *Westhusin v. Landowners Oil Ass'n,* 143 Kan. 404, 55 P. 2d 406; *Sauberli v. Sledd,* 143 Kan. 350, 55 P. 2d 415; *Fitch v. United Royalty Co.,* 143 Kan. 486, 55 P. 2d 409; *Terrill v. Hoyt,* 149 Kan. 51, 87 P. 2d 238; *Webber v. Home Royalty Ass'n,* 149 Kan. 678, 88 P. 2d 1053.) The special period

of limitation prescribed by the speculative securities act for avoiding transactions of this character, and not general statutes of limitation, is applicable. (*Hoffman v. Home Royalty Ass'n,* 146 Kan. 279, 69 P. 2d 741; *Terrill v. Hoyt,* supra, pp. 55, 56; *Webber v. Home Royalty Ass'n,* supra, p. 682.) The period within which defendant might have elected to avoid the transaction was two years under the 1929 law, and three years under the 1935 law. (*Terrill v. Hoyt,* supra; *Webber v. Home Royalty Ass'n,* supra.) Defendant did not elect to avoid the transaction for over eight years and seven months. On the contrary, he not only acquiesced in the transaction during this extended period, but affirmed and ratified it by making payments thereon in the sum of $2,200 and by accepting its benefits in the form of dividends in the sum of $850. Having so affirmed and ratified the transaction, he cannot now repudiate it. (*Fitch v. United Royalty Co.; Sauberli v. Sledd,* and *Westhusin v. Landowners Oil Ass'n,* supra.)

Defendant contends he did not discover the alleged fraud until after February 20, 1939. His answer and cross petition disclosed the charter of the plaintiff corporation was filed November 17, 1926. This transaction was consummated September 1, 1930. There is no reason why, in the exercise of reasonable diligence, he could not have discovered the alleged want of plaintiff's authority under its charter to negotiate the sale. Under these circumstances he cannot now complain of lack of notice of the powers of the corporation under its charter. (*Scott v. Bankers Union,* 73 Kan. 575, 85 Pac. 604.)

We have already stated the special speculative securities statute of limitations controls in the instant case. Moreover, if the general fraud statute—under which a cause of action for fraud accrues from the date of the discovery of the fraud—applied, defendant's cause of action would, nevertheless, be barred for the reason that, in the exercise of reasonable diligence, he could have discovered the alleged fraud at any time after it was perpetrated, namely, September 1, 1930. (*Hege v. Suderman,* 142 Kan. 495, 51 P. 2d 23; *Fitch v. United Royalty Co.,* supra, pp. 494, 495; *Webber v. Home Royalty Ass'n,* supra, pp. 682, 683.)

Having failed to rescind the transaction, as defendant was privileged to do, and having confirmed and ratified the transaction, he cannot now avoid it. Having ratified the transaction, he is liable for the balance due on the note, and the trial court properly ordered

judgment and foreclosure of the mortgage. (See, also, *Pelham v. Hopper,* 302 Ill. App. 51, 23 N. E. 2d. 389 [Oct., 1939], and *Restlawn Memorial Park Ass'n v. Solie,* 233 Wis. 425, 289 N. Y. 615 [1940].)

Defendant relies upon decisions under the negotiable instruments law in which ratification of a voidable transaction was not involved. They are not controlling. In view of what has been said it is unnecessary to note other contentions.

The judgment is affirmed.