## THOMAS et al. v. UNITED ROYALTY CO. et al.

No. 26732. March 16, 1937.

Rehearing Denied March 30, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 8, 1937.

W. W. Davis and C. L. Armstrong, for plaintiffs in error.

Max G. Cohen, for defendants in error.

RILEY, J. This is an action brought by plaintiffs in error to cancel an oil and gas royalty interest in certain land in Kay county, executed May 16, 1923.

Defendant is a common-law or express trust, operating under a declaration of trust since October, 1922. By the declaration of trust it was proposed to assemble and unite the one-half of the oil and gas rights of the fee owners of 50,000 acres of land in the several oil producing states to be represented by two million units, or certificates of interest.

The fee owners pooling their land or oil

and gas rights therein into the pool were to receive 70 per cent. of the units and the trustees were to receive 30 per cent., they paying the expense of uniting or assembling the necessary acreage. Fee owners were to receive units, or certificates of interest in the trust, similar to certificates of stock in a corporation, in exchange for the transfer of the part of the oil and gas rights deeded by them to the trust, the number of units each fee owner was to receive being determined by the number of acres of land and the portion of the oil and gas rights conveyed; some fee owners assigned one-half of the one-eighth of all oil and gas rights, others a less interest.

Plaintiff's land was already leased, and for the one-eighth of the one-eighth royalty reserved in the lease, he received 2,000 units of the trust.

The trust was to continue for a period of 20 years, with a provision that if, prior to the expiration of the 20-year period, the holders of two-thirds of the units then outstanding could determine whether to terminate or continue the trust for a like or shorter period.

At the time plaintiffs conveyed the oil and gas rights to the trust it had not complied with the then existing law of the state defining "securities and speculative securities," and regulating the sale of the latter, designated and commonly known as the "Blue Sky Law." Article 62, ch. 6, C. O. S. 1921.

Plaintiffs sue for cancellation upon the ground of alleged fraud in that said trust, and its trustee in obtaining the deed from plaintiffs, falsely and fraudulently represented to plaintiffs that the United Royalty Company was all the time qualified under the "Blue Sky Law" to transact business in the state of Oklahoma, and that because of said fraud, and because said company was not in fact qualified under said law, the deed was and is void; that plaintiffs did not learn that the representations so made were false until March, 1933, at which time, or thereafter, being put upon inquiry, they searched the records of the State Issues Commission, now the Oklahoma Securities Commission, and for the first time learned that said company was not qualified under said law to sell its so-called securities. Plaintiffs further allege that the company violated said law in withholding promotion commissions to the extent of 30 per cent., that being in excess of the amount authorized by said "Blue Sky Law." They also allege a breach of the trust agreement in

that the company failed to keep and maintain the required interest in the 50,000 acres of land.

It is further alleged that the contract of sale and deed are void because it provides therein an indefinite duration thereof, by reciting the life thereof to be a period of 20 years, or as long thereafter as oil and gas or other minerals are produced from any tract within the 50,000 acres.

Defendants answered by general denial, with certain admissions as to the nature of the company as being an express trust substantially as alleged in the petition. They then plead statute of limitations, laches, and estoppel in that ten years or more had elapsed after the execution of the deed and before plaintiffs commenced this action; that in the meantime many shares or units in the company had been sold and transferred to innocent purchasers, and that plaintiffs had during said time participated in the venture and had received profits therefrom.

Plaintiffs replied by general denial, and specifically deny that the statute of limitations had run, because they did not learn of the alleged fraud until about one year before the petition was filed.

They also deny laches in that they allege that immediately after they learned of the alleged fraud they made demands upon defendants for the cancellation of the conveyance, and that upon final refusal they promptly commenced this action.

The issues thus joined were tried to the court, resulting in a finding of the issues of facts and of law in favor of defendants, and judgment and decree was rendered accordingly. From this judgment and decree, plaintiffs appeal.

The evidence is in sharp conflict on the question of alleged representation of the trustees to plaintiff that the company had complied with the "Blue Sky Law." Plaintiff and other witnesses testified positively that such representations were made.

C. E. Pachel, one of the trustees of the company at the time the conveyance was negotiated for and executed and the one plaintiff claimed made such representations, just as positively denied same. There was some evidence tending to corroborate.

It cannot be said that the finding of the court on the issues of fact are against the clear weight of the evidence. It will not therefore be disturbed.

232

It is conceded, however, that the company had not complied with the "Blue Sky Law," and that the units or shares issued by it were within said law.

There remains the question of law whether the transaction between plaintiffs and the Royalty Company in which plaintiffs conveyed the royalty interest in their land and received therefor 2,000 of such units or shares, was void absolutely, so as to warrant the cancellation of the conveyance at any time, or merely voidable, and an action for cancellation thereof subject to the defenses of ratification, laches, estoppel, and statute of limitations.

In Wigington v. Mid-Continent Royalty Co. (Kan.) 288 P. 749, it is held:

"Exchange of units of common-law trust for oil and gas royalty constitutes 'sale' within Blue Sky Law; exchange by common-law trust of its capital units for oil and gas royalty without previous compliance with Blue Sky Law was void, and party conveying royalty could rescind."

In Moos v. Landowners' Oil Ass'n (Kan.) 15 P. (2d) 1073, it is held:

"Conveyance by landowner who had leased land for oil and gas development, pooling one-half of prospective royalties, held not invalid as unconscionable or intrinsically fraudulent."

And:

"Conveyance by landowner who had leased land for oil and gas development, pooling one-half of prospective royalties, where grantee had not procured Blue Sky permit, held invalid."

And:

"Cancellation of conveyance by landowner pooling one-half of prospective royalties on land leased for oil and gas development, because grantee had not secured Blue Sky permit, held not to affect title of purchasers from grantee for value and without notice."

In that case it was held that the essential elements of equitable estoppel precluding Moos from raising the question of necessity for a Blue Sky permit were wanting. Under the declaration of trust there involved the trustees of the association were given power to sell and dispose of the royalty interests acquired under its scheme, and under that authority it had sold and conveyed a certain portion of the royalty interest which had been conveyed to it by Moos, the landowner. The purchasers of such interests were protected by the judgment of the Supreme Court as innocent purchasers.

In the instant case the trustees have no power to sell and convey the royalty interests conveyed by plaintiffs and there are no alleged innocent purchasers in that sense. But there is a contention that the trustees of the association have issued to other parties nearly one million units of the association in return for a large amount of royalty interest like the interest here involved, and that the purchasers of such units are entitled to protection.

Pennicard v. Coe (Ore.) 263 P. 920, is cited by plaintiff. That was an action for the rescission of a contract for the sale and purchase of securities somewhat similar to those here involved. Therein it was held:

"General rule of law is that contract made in violation of statute is void, notwithstanding penalty attached."

And:

"Contract of sale of certificates, transferring units of interest in syndicate, in violation of Blue Sky Law, as amended by Laws 1921, p. 790, was void, notwithstanding penalty attached under Or. L., sec. 6484, and buyer could rescind contract and recover sum paid."

To the same effect is Bond v. Coe (Ore.) 263 P. 924, and Moe v. Coe (Ore.) 263 P. 925. These cases all hold that transactions of the nature of the one here involved are subject to rescission. In some of the cases the transactions are said to be void. But notwithstanding the statements that the transactions are void, it is held or intimated in nearly every case that they are subject to ratification and subject to the defense of equitable estoppel, and in reality it is held the transactions are voidable and not void.

In Westhusin v. Landowners Oil Ass'n (Kan.) 55 P. (2d) 406, decided March 7, 1936, and after this appeal was perfected, it is held:

"A sale of speculative securities, unlawful because the seller had not secured a permit to sell pursuant to the Speculative Securities Act, is not void, but is voidable by the purchaser."

In the body of the opinion it is held:

"The Collins royalty deed to defendant was voidable by Collins on the ground defendant had not procured a permit to sell speculative securities. The deed was not void, and was valid until disaffirmed. Collins affirmed it."

Fitch v. United Royalty Co. (Liberty Royalties Corporation et al., interveners) (Kan.) 55 P. (2d) 409, is a case identical in principle with the instant case. Substantially the only difference is that the Liberty Royalty Corporation and others, purchasers of a large number of units from the United

Royalty Company, intervened in the above case. In that case the plaintiff acquiesced in the transaction for a period of five years while the plaintiff in the instant case acquiesced nearly 10 years.

On the question of whether the transaction was void or voidable, the opinion says:

"Coming now to the legal consequences arising from the fact that the United Royalty Company had not procured a permit authorizing it to issue speculative securities before it issued to plaintiff 1,337 units of the trust estate in exchange for his royalty deed, the trial court held that the transaction was void. That ruling was incorrect. It was voidable only. Westhusin v. Landowners' Oil Ass'n (Kan.) 55 P. (2d) 406, this day decided. Plaintiff could have rescinded the contract of sale and exchange if he had been so inclined and if he had acted with reasonable diligence. Wigington v. Mid-Continent Royalty Co., 130 Kan. 785, 288 P. 749; Ward v. Home Royalty Ass'n, 142 Kan. 546, 50 P. (2d) 992. If he had merely promised to convey to defendant a royalty interest in his land for 1,337 units of the trust estate, he could have defeated an action by defendant for specific performance, or for breach of contract. If he had bought the 1,337 units and had given his promissory note to pay for them, a plea of illegality would have been a good defense to any such action. Meriam v. West, 114 Kan. 131, 216 P. 1102; Reilly v. Clyne, 27 Ariz. 432, 234 P. 35, 40 A. L. R. 1005. If plaintiff had bought these 1,337 units and had paid the cash for them, he could have maintained an action, timely begun, against the original trustee with whom he dealt for the recovery of the purchase price. Daniels v. Craiglow, 131 Kan. 500, 292 P. 771. Instances to the same effect could be indefinitely multiplied and it is on such precedents that counsel for the appellee seek to uphold the trial court's decision."

As to matters going to the defense of the action, the court says:

"But the case before us arising out of a transaction which was consummated in 1928, and not questioned for nearly five years thereafter. Meantime, the plaintiff had received his proportionate share of the dividends or profits arising from the defendant's pooling venture, which had only been made possible by his long acquiescence. Not to this day has he indicated that he was under any legal or moral obligation to return the quid pro quo he has received for the conveyance whose cancellation he now demands. Even the text-book law his counsel quote for our instruction does not countenance such an attitude. They quote 5 Fletcher. Cyc. Corp. sec. 3486. as follows: 'Stock issued without authority and in violation of law is void, and confers no rights on the person to whom it is issued, and subjects him to no liabilities.

A contract to issue stock in violation of the provisions of the Constitution or of the statute will not be enforced by the courts, nor can damages be recovered for its breach. A person may rescind his contract to subscribe for or purchase such stock and recover back what he has paid for it, upon a tender back or surrender of the certificate, and of any dividends which he has received."

As to whether the contract was subject to ratification, it is stated:

"So we must regard defendant's omission to provide itself with a Blue Sky permit as a mere breach of statute, malum prohibitum, not malum in se. It is therefore apparent that the rule of law which declares that a contract tainted with illegality because of some inherent vice which brings it under the ban of an express statute is incapable of ratification does not apply."

"Neither does the related rule barring defenses of estoppel or laches apply."

And finally it is said:

"The foregoing does not exhaust the reasons which may be given to show that the net result in the trial court below was erroneous. Even granting that the transaction between plaintiff and the United Royalty Company in 1928 was fraudulent because of mere want of a Blue Sky permit, plaintiff's action for relief on the ground of fraud could not be commenced after two years measured from the time the plaintiff learned, or readily could have learned, that the 1,337 units he had gotten for his royalty interest had been issued without the sanction of the Blue Sky department. Hege v. Suderman, 142 Kan. 495, 51 P. (2d) 23, and citations."

All this was said concerning the rights of the plaintiff as against the United Royalty Company without regard to the defense of the interveners. All that was there said applies with equal or greater force to plaintiffs in this action.

Plaintiffs did not question the transaction for nearly 10 years. In the meantime they received some 41 dividend payments, which, so far as the record discloses, they retain and do not offer to return. At the trial they did tender the certificate issued to them.

The same defendant, the same declaration of trust, and substantially the same Blue Sky Laws and substantially the same state of facts are involved in the Fitch Case and the instant case. If the Fitch Case, supra, is to be followed, it is decisive of this case. We think it correctly states the law, and we approve its holding and subscribe to the reasons therefor.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and

234

PHELPS, CORN, GIBSON, and HURST, JJ., concur. BUSBY, J., dissents in part and concurs in part. WELCH, J., absent.