## FARMERS' UNION CO-OPERATIVE ROYALTY CO. et al v. LITTLE et al.

No. 27545. March 1, 1938.

Chas. West, for plaintiff in error Farmers' Union Co-operative Royalty Company.

S. H. King and James E. Grigsby, for plaintiff in error Flag Oil Company.

Reuel W. Little and Don Welch, for defendants in error.

PHELPS, J. Sam and Rebecca Little, as plaintiffs, brought this action against Farmers' Union Co-operative Royalty Company and Flag Oil Company, as defendants, to cancel certain oil and gas royalty conveyances and to quiet title to land. Judgment was for plaintiffs, and defendants appeal. The parties will be referred to herein as they appeared in the trial court and for convenience the defendant Farmers' Union Co-operative Royalty Company will be referred to as "royalty company," the defendant Flag Oil Company as "Flag company" and the Flag Oil Corporation as "Flag corporation".

The material facts were: The royalty company, a domestic corporation, was organized as a co-operative industrial enterprise under the provisions of chapter 147, S. L. 1919. The law, as amended (which amendments are not material to the present case), appears as sections 9894-9909, O. S. 1931. It was incorporated with a capital stock of $150,000 divided into 3,000 shares of $50 each. The stated purpose of the corporation was to buy or sell, exchange, or deal generally in oil and gas mining leases, royalties, and other mineral rights.

The Flag company, a domestic corporation, by its amended articles of incorporation, had a capital stock of $10,000 divided into 10,000 shares of $1 each. The Flag corporation, a Delaware corporation, had a capital stock of $3,000,000 divided into 3,000,000 shares of $1 each. The royalty company and the Flag company operated under a contract whereby the royalty company employed the Flag company exclusively to assemble one-half of the mineral rights under acreage and to exchange therefor the certificates of stock of the royalty company. As compensation, the Flag company received one-fourth of the mineral rights acquired under the various tracts of land. In addition, it paid to the Oklahoma Farmers' Union the amount of $5 for each royalty deed acquired by the royalty company and the Flag company. The royalty company and the Oklahoma Farmers' Union had an interlocking directorate; otherwise, the Oklahoma Farmers' Union had no con-

nection with either the royalty company or the Flag company.

Under its charter the royalty company acquired from landowners in the Mid-Continent field, particularly in Oklahoma, mineral deeds to one-half of 80 acres, or 40 acres of royalty. In acquiring mineral deeds, the state was "checkerboarded" under the theory that the plan was advantageous to the interested parties. The royalty company issued to the grantor one share of its stock for each 80-acre deed, the grantor receiving dividends from the earnings of the entire royalty pool.

The Flag company, along with other subsidiaries operating in other states, assigned to the Flag Corporation of Delaware its one-fourth mineral rights acquired under its contract with the royalty company. Stock of the Flag corporation was issued against the mineral interests thus acquired and sold to the public. This fact is not material to the issues involved in the present case.

In the case at bar a mineral deed to one-half interest in 80 acres of land was executed by the plaintiff Sam Little to the royalty company on October 17, 1929. On October 17, 1930, a mineral deed to one-half interest in 160 acres of land was executed by the plaintiff Sam Little to the royalty company and the Flag company. In consideration of the conveyances, plaintiffs received three shares of the capital stock of the royalty company. Two dividends declared on the stock were received and retained by the plaintiffs.

In their petition plaintiffs allege that a portion of the land conveyed under the mineral deeds was their homestead, and having been executed by the plaintiff Sam Little, without being joined by his wife Rebecca Little, the conveyances were void. In addition plaintiffs allege fraud in the procurement of the deeds. Plaintiffs further allege that the transaction is void for the reason that the shares of the stock of the royalty company which were issued to them were speculative securities within the meaning of the Blue Sky Law, art. 62, chapter 6, C. O. S. 1921, which law was in effect at the time of the execution of the conveyances and, as alleged, its provisions had not been complied with by the defendants. Defendants answered by general denial, with the admissions as to their nature as domestic corporations. They then plead statute of limitations, laches and estoppel, in that five years or more had elapsed after the execution of the deeds and before plaintiffs commenced this action. Further, defendants allege that plaintiffs had, during said time, participated in the venture and had received profits therefrom. For further answer defendants state that the royalty company was incorporated as a co-operative industrial enterprise, under chapter 147, S. L. 1919, and that on the 29th day of April, 1920, the then Attorney General of the state gave an opinion as required by law to the State Issues Commission, advising the commission that companies incorporated under the co-operative corporation act were not within, but were excepted from, the provisions of the Blue Sky Law.

The case was tried to the court, which made certain findings of fact in which it found: That the conveyances had been executed as alleged; that the signature of the plaintiff Sam Little on both the conveyances was his genuine signature; that no part of the land conveyed was the homestead of the plaintiffs; that there was no actionable fraud in the transaction; that the two mineral deeds were executed in consideration of three shares of the capital stock of the royalty company which were speculative securities within the meaning of the Blue Sky Law, the sale or exchange of which was illegal in the absence of a compliance with the provisions of the law relating to the issuance of permits; which the court found had not been obtained by the defendants.

Under these facts the court concluded that the mineral deeds were void and rendered judgment canceling the conveyances and quieting title in the plaintiffs. For reversal of the judgment defendants urge that the trial court erred in finding that the Blue Sky Law applied to the transaction; that the court erred in quieting title to plaintiffs' land; that the action was barred by limitations, and that the plaintiffs, having received benefits from their shares of stock, had adopted, ratified, and confirmed the mineral deeds and were, therefore, estopped to deny their validity; also, that plaintiffs were barred by their laches.

The defendants rely, principally, upon the holding of this court in Thomas v. United Royalty Co., 180 Okla. 230, 68 P.2d 490, decided subsequent to the trial of the case at bar. In that case we approved the holding and adopted the reasoning of the Supreme Court of Kansas in Fitch v. United Royalty, 55 P.2d 409. The decision in the Fitch Case is based upon facts closely analogous to the facts in the present case; the principal difference being that in that case the defendant was organized as a common-law trust and issued unit interests, whereas in the case at bar the defendant royalty company was a corporation and issued its stock. The difference is not material to the issue pre-

sented by this appeal. Discussing the question here presented, the court in Fitch v. United Royalty Co., supra, said:

"Coming now to the legal consequences arising from the fact that the United Royalty Company had not procured a permit authorizing it to issue speculative securities before it issued to plaintiff 1,337 units of the trust estate in exchange for his royalty deed, the trial court held that the transaction was void. The ruling was incorrect. It was voidable only. Westhusin v. Landowners' Oil Ass'n (Kan.) 55 P.2d 406, this day decided. Plaintiff could have rescinded the contract of sale and exchange if he had been so inclined and if he had acted with reasonable diligence. Wigington v. Mid-Continent Royalty Co., 130 Kan. 785, 288 P. 749; Ward v. Home Royalty Ass'n, 142 Kan. 546, 50 P.2d 992. * * *

"But the case before us arises out of a transaction which was consummated in 1928, and not questioned for nearly five years thereafter. Meantime the plaintiff had received his proportionate share of the dividends or profits arising from the defendant's pooling venture which had only been made possible by his long acquiescence. Not to this day has he indicated that he was under any legal or moral obligation to return the quid pro quo he has received for the conveyance whose cancellation he now demands. Even the text-book law his counsel quote for our instruction does not countenance such an attitude. They quote 5 Fletcher, Cyc. Corp. sec. 3486, as follows:

" 'Stock issued without authority and in violation of law is void, and confers no rights on the person to whom it is issued, and subjects him to no liabilities. A contract to issue stock in violation of the provisions of the Constitution or of the statute will not be enforced by the courts, nor can damages be recovered for its breach. A person may rescind his contract to subscribe for or purchase such stock and recover back what he has paid for it. * * *' "

See, also, Dunham v. Chemical Bank & Trust Co., 180 Okla. 537, 71 P.2d 468.

On the trial plaintiffs offered to reassign the stock of the royalty company held by them, and to return, with interest, the dividends received by them on the stock. The offer came too late. Plaintiffs did not commence their action until February 18, 1936— nearly six years after the issuance of the stock and the execution of the conveyances. We quote approvingly from Westhusin v. Landowners' Oil Ass'n (Kan.) 55 P.2d 406, at page 408:

"Plaintiffs did not commence their action until January 22, 1934. Assuming plaintiffs were originally privileged to avoid the royalty conveyance, they were required to act with reasonable promptness and decisiveness. They could not affirm for awhile and then disaffirm. Operations of the pool affected property and financial interests of many persons, and plaintiffs could not experiment regarding the advantages to them of membership in the pool for more than four years, and then successfully apply to a court of equity to take them out."

The record shows that there are approximately 1,600 shares of stock of the royalty company outstanding. Under the basis of operation the royalty company shareholders are jointly interested in a pool of approximately 64,000 mineral acres of land. Obviously it was a co-operative venture with possibilities of gains to be shared in proportion to the amount of stock owned by each stockholder. Whether the returns were small or great does not change the character of the arrangement voluntarily entered into by those who subscribed to the plan. Of necessity each stockholder is affected by the disturbance of the relationship existing under the plan of operation. See Westhusin v. Landowners' Oil Ass'n (Kan.) 55 P.2d 406, supra.

In the present case it appears that the defendants did not intentionally evade or violate the law in the issuance of the royalty company stock. This appears plain from the fact that the letter from the then Attorney General written to the State Issues Commission stated that under its charter the royalty company was not required to secure a permit to do business. In its finding the trial court found for the defendants on every question presented except that the transaction was void for the reason that the defendants had not complied with the provisions of the Blue Sky Law. In view of the decision in Fitch v. United Royalty Co., supra, and the holding of this court in Thomas v. United Royalty Co., supra, we conclude that the court erred in rendering judgment for the plaintiffs. In view of this conclusion it is unnecessary to consider other questions presented in the appeal.

The judgment of the trial court is reversed and the case remanded, with directions to enter judgment for defendants.

OSBORN, C. J., and CORN, GIBSON, and DAVISON, JJ., concur.