## FARMERS UNION CO-OPERATIVE ROYALTY CO. et al. v. SOUTHWARD et al.

No. 27462.   April 5, 1938.

Rehearing Denied June 28, 1938.

Application for Leave to File Second Petition for Rehearing Denied
Sept. 27, 1938.

Chas. West, for plaintiff in error Farmers Union Co-Operative Royalty Company.

S. H. King, Lynn Adams, and Hayes, Richardson, Shartel, Gilliland & Jordan, for plaintiffs in error Flag Oil Company and Flag Oil Corporation.

W. C. Austin, Robert B. Harbison, and L. B. Yates, for defendant in error.

PHELPS, J.   This was an action by J. R. Southward against the Farmers Union Co-

Operative Royalty Company, a corporation; Flag Oil Company, a corporation; Flag Oil Corporation, a corporation, and American Minerals Corporation, a corporation, to cancel a mineral conveyance and to quiet title to land. Judgment was for plaintiff, and defendants appeal.

The defendants were engaged in operating a pool of oil and gas royalty interests pursuant to a plan heretofore considered by this court. Farmers Union Co-Operative Royalty Co. et al. v. Little et al., March 1, 1938, 182 Okla. 178, 77 P.2d 33.

Plaintiff sued for cancellation upon the ground of alleged fraud of the agents of the defendant Farmers Union Co-Operative Royalty Company in the procurement from plaintiff of a mineral deed to an undivided one-half interest in mineral rights in 80 acres of land. That such agents falsely and fraudulently represented to plaintiff that the royalty company was organizing a royalty pool to consist of 3.000 headright interests. That, relying upon such representations, he executed the conveyance. That such representations were false and untrue in that the royalty company never acquired 3.000 headrights, and in fact secured but 1.971 of the proposed number. That the royalty company has breached the agreement because of its failure to acquire the number of headrights contemplated at the time of the execution and delivery of the mineral deed; and, further, that the defendants have abandoned the pooling venture. The plaintiff further alleged that the defendants were without authority of law to accept and hold conveyances of royalty interests in real estate.

The defendants answered by general denial and by admission of their corporate organization and the purpose of such incorporation and the acquiring of the mineral rights involved. The defendants further plead that the plaintiff has accepted the benefits of the pool and is estopped by the statute of limitations to question the legality of the transaction; also, that plaintiff is guilty of laches in consenting to the operation of the enterprise for nearly six years after his participation therein without questioning the contractual arrangement or the legality of defendant's incorporation.

The plaintiff replied by general denial and by specific denial that the statute of limitations had run, asserting that he did not know of the alleged fraud until within two years of the time of the filing of his petition. Plaintiff further alleged that he is not guilty of laches for the reason that the facts with reference to the matters complained of were not known prior to the filing of the action.

The issues thus joined were tried to the court, which made findings of fact and conclusions of law. The court found:

"The court finds that the defendants for the purpose and with the intention of securing the mineral deeds in each of these cases, made certain representations. In the case of the Farmers Union Co-Operative Royalty Company, the representation was made orally and by the production of prospectus, and other literature that the said defendant was planning a pool of three thousand (3,000) tracts of land with mineral rights similar to the one taken from the plaintiff and that if the plaintiff did contribute his acreage, he would receive in consideration therefor, one headright or share of stock in the said corporation, which would entitle him to a 1/3000 interest in two thousand nine hundred and ninety-nine (2,999) other similar mineral rights, and that the sole reason for the execution to the defendant of the mineral deed in this case was the plaintiff's reliance upon such representations. That such representations were false, either known to be false at the time, or recklessly made by the defendant, who at the time had made no adequate provision for carrying out its part of the contract to secure the two thousand nine hundred ninety-nine (2,999) other tracts. That the defendant never performed its contract by securing the two thousand nine hundred ninety-nine (2,999) other tracts of mineral leases, but only secured one thousand nine hundred seventy-one (1.971) leases and had at the time of the trial definitely abandoned any attempt to secure additional mineral deeds, and had failed to perform its part of the contract with the plaintiff. * * *

"The court further finds that both the defendant companies were corporations organized and incorporated and doing business under the laws of the state of Oklahoma, and were dealing in real estate.

"The court further finds that the Flag Oil Corporation, the Flag Oil Company, and the American Mineral Corporation, are corporations, conceived, incorporated, managed and controlled by the same person, or group of persons, who conceive, incorporate and control the defendants, the Farmers Union Co-Operative Royalty Company and the Panhandle Royalty Company. And at the time the interest of the said Flag Oil Corporation, the Flag Oil Company and the American Mineral Corporation, was acquired in the property, they had full knowledge of all representations made by the defendants to the plaintiffs (sic) herein.

"The court finds that the fraud and misrepresentations that had been practiced on the plaintiff by the defendants was not dis-

covered by him until less than a year before the filing of the suit in this case."

On the facts so found the court concluded as a matter of law that the plaintiff was induced to execute the mineral deeds through fraudulent representations of the defendant Farmers Union Co-Operative Royalty Company and that no valid consideration had been given the plaintiff for his mineral deed; that the mineral deed executed was an interest in real estate; that the Farmers Union Co-Operative Royalty Company had no authority, under the law, to purchase or acquire the mineral deed sued on; that the remaining defendants had full knowledge of the fraudulent representations made by the defendant Farmers Union Co-Operative Royalty Company in acquiring the mineral deeds and are bound by the acts of said defendant. The court further concluded that the action was not barred by the statute of limitations and that the mineral deed should be canceled and the defendants barred from asserting any interest, claim, or rights in or to the property.

From the judgment the defendants appeal, asserting:

(1) That the court erred in holding that the evidence offered established that the mineral deed was void for the reason that it was procured by fraud and misrepresentation, and asserting that such finding is contrary to all competent evidence and is contrary to law.

(2) That the court erred in holding that plaintiff's cause of action was not barred by the statute of limitation under paragraph 3 of section 101, O. S. 1931.

(3) That the court erred in holding that the defendants were without authority to hold title to the mineral conveyance, and in holding that plaintiff was not guilty of laches.

An examination of the record reveals that the only proof submitted on the question of fraud upon which we can predicate an intent not to assemble the 3,000 headrights is the fact that this number was not obtained. The evidence shows that 1,971 headrights were secured and that further efforts in this direction were curtailed for several years by the depressed financial condition of the country. It appears, further, that plaintiff was an early subscriber to the enterprise and that most of the headrights were secured subsequent to his entrance in the pooling arrangement. Periodical reports of the undertaking were made by the defendants and received by the plaintiff in which the progress being made was quite fully and elaborately set out. During this time it cannot be seriously contended that the plaintiff was misled concerning the operations of the venture. In view of the record, a breach of the contract in the failure to obtain the 3,000 headrights cannot be considered as proof of fraud in the making thereof. In 26 C. J. 1087, sec. 25, it is held:

"An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events. Predictions as to future events are ordinarily regarded as nonactionable expressions of opinions upon which there is no right to rely, and obviously cannot constitute fraud where made in an honest belief that they will prove correct."

See, also, 12 R. C. L. 252, et seq.; 19 and 21-29 and R. C. L. Perr. Sup. vol. 4, p. 3104-3105, secs. 21-29.

In Downtown Chevrolet Co. v. Niccum et al., 180 Okla. 616, 71 P.2d 957, in the syllabus, we held:

"Fraud is never presumed, but must be established by clear, satisfactory and convincing evidence.

"(2) To render the nonperformance of a promise to be performed in the future fraudulent, the promise to perform must be accompanied by an intent not to perform.

"(3) The breach of a contract is not evidence of fraud in the making of the contract."

Measured by the rule herein announced, plaintiff failed to establish fraud in the procurement of the mineral deed sufficient to annul the conveyance. The finding of the court on this issue is against the clear weight of the evidence and cannot be sustained.

There remains for consideration the question of whether plaintiff may rightfully challenge the authority of the defendants, as corporations, to hold mineral rights in real estate. Section 9717, O. S. 1931, provides:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit to which such de facto corporation may be a party; but such inquiry may be had, and action brought, at the suit of the state, in the manner prescribed in the Code of Civil Procedure."

In Industrial Building & Loan Association v. Williams. 131 Okla. 167, 268 P. 228, we held in the syllabus:

"The legal existence of a corporate entity may not be inquired into by those with whom it has, in the name and capacity of such entity, contracted."

In Union Trust Co. v. Hendrickson, 69 Okla. 277, 172 P. 440, in the syllabus, we said:

"The state alone can question as ultra vires the acquiring title to and holding real property by a corporation."

In the present case the landowner, along with many others, entered into an agreement and joined a pooling venture which was not intrinsically fraudulent or unconscionable in its provisions. The plan has been approved by the courts in many states. For six years the plaintiff acquiesced in the arrangement, received dividends, and maintained his contractual relationship with defendants. The amount ultimately to be realized from the undertaking is problematical—depending upon oil operations on the land covered by the pool. Withdrawal of plaintiff's land from the pool obviously would lessen the returns inuring to others who, like himself, subscribed to the co-operative enterprise. If plaintiff's contract is bad, the contracts of all members of the pool are bad, though others may desire to continue the relationship voluntarily assumed in the hope of future satisfactory returns. Counsel argues that the whole co-operative plan was "conceived in sin and born in iniquity" for the sole purpose of fleecing the farmers out of an interest in mineral rights. The answer to that is: If any such intent existed on the part of the defendant, it does not appear from the record in the present case.

If, as contended by plaintiff, the whole scheme of operations has become inactive and hopelessly enmeshed in intricacies which prevent a fulfillment of the purposes contemplated in their inception, then the law affords both a forum and a remedy whereby the interests of all members may properly be presented and determined. This may not logically be done at the instance of a few members in individual actions.

In view of our conclusions herein, we consider it unnecessary to discuss questions of estoppel and laches argued in the briefs.

The judgment of the trial court is reversed and the cause remanded, with directions to proceed in harmony with the views herein expressed.

BAYLESS, V. C. J., and WELCH, CORN, and HURST, JJ., concur.