FARMERS UNION CO-OPERATIVE ROYALTY CO. et al. v. COOK et al.

No. 31564. Dec. 5, 1944.

Rehearing Denied Jan. 23, 1945.

*154 P. 2d 957.*

E. P. Ledbetter, of Oklahoma City, for plaintiff in error Farmers Union Co-Operative Royalty Company.

V. E. Stinchcomb, of Oklahoma City, for plaintiff in error Flag Oil Company.

54

W. F. Schulte, of Ada, for defendants in error.

HURST, J. J. T. Wade sued the defendants, Farmers Union Co-Operative Royalty Company and Flag Oil Company, to cancel a mineral deed covering an undivided one-half interest in an 80-acre tract of land in Coal county and for an accounting. Wade died during the pendency of the action, and it was revived in the name of his children as next of kin. Thereafter judgment was rendered for the plaintiffs, and the defendants appeal.

On October 15, 1930, Wade and wife executed and delivered the deed in question to said defendants as grantees, the deed reciting that three-fourths of such interest was conveyed to Farmers Union Company and one-fourth to Flag Company. As a consideration for said deed, Wade received one share of stock in Farmers Union Company. The plan under which the transaction was consummated, and the relation existing between the companies, are set out in Farmers Union Co-Operative Royalty Co. v. Little, 182 Okla. 178, 77 P. 2d 33, and Farmers Union Co-Operative Royalty Co. v. Southward, 183 Okla. 402, 82 P. 2d 819. Under the prospectus prepared and sent out by the defendants beginning in the early part of 1929, and under which the mineral rights were assembled, it was their intention to acquire 3,000 mineral units, each unit consisting of the equivalent of 40 full acres of mineral rights, and as a consideration for each unit one share of stock in Farmers Union Company was to be delivered to the landowner, and Farmers Union Company was to own three-fourths interest and Flag Company one-fourth interest in each unit, and Flag Company was to assemble the acreage and pay the expenses thereof in consideration for its one-fourth interest. The prospectus painted quite a rosy picture as to the possibilities of the plan, and contained these statements:

"Advantages of the Plan. By exchanging a perpetual interest in part of his mineral rights for a share of stock in the Farmers' Union Pool the landowner acquires a perpetual interest in 2,999 other tracts and thus multiplies his chance of striking oil 3,000 fold . . ."

"Conclusion. . . . The whole proposition merely resolves itself into a question of whether the landowner prefers to take all the risk by retaining all of his mineral rights and gambling that oil will be struck on his own land, or whether he prefers to trade a part of his mineral rights to the Farmers' Union Pool and multiply his chances of striking oil 3,000-fold. . . ."

The acquiring of acreage under the the plan commenced in the early part of 1929 and continued until 1932, when, because of hard times and lack of funds, the acquiring of acreage practically ceased. Wade was No. 1599 in the company, so that 1598 units had been acquired and that many shares of stock issued under the plan before Wade's mineral interest was obtained. The total number of units acquired up to the time of the trial below was 1965 (in the Southward Case it is stated as being 1,971), so that at least 366 units were acquired after Wade exchanged his mineral interest for a share of stock in the Farmers Union Company. Some 17 bulletins, showing the progress of the company in acquiring units and containing other information, were sent to the stockholders by Farmers Union Company during 1929 and 1930, the last being dated December 6, 1930. Two dividends were declared and paid by the Farmers Union Company, one for $2 and one for $1.50. Wade cashed the first dividend check, but not the second. The companies collected $130 in oil and gas rentals from the Wade land, and judgment was rendered against them for that sum, less the $2 dividend received by Wade, together with interest.

Wade first filed a suit to cancel said deed in March, 1936, but that suit was dismissed on February 11, 1937, and the present action was filed on February 11, 1938. It appears that, in addition to the hard times and shortage of capital, the filing of these and other similar suits in various counties and suits between the two companies may have had a tend-

ency to prevent the acquiring of the full 3,000 units.

The defendants urge five grounds for reversal, one being that the judgment appealed from is contrary to the evidence. The plaintiffs here urge two reasons why the judgment canceling the deed should be sustained. They brief the case under two propositions stated by them as follows: (1) "Failure of consideration justified cancellation" and (2) "That the many things concealed from Mr. Wade constituted sufficient fraud to authorize him to rescind the transaction." They do not now urge the reasons disposed of in the former appeals, above, involving the plan under which the defendants acquired mineral interests.

1. In support of the first proposition, that plaintiffs are entitled to have the deed canceled for failure of consideration, plaintiffs urge that, under the contract between Wade and the defendants, Wade was entitled to own a share in 3,000 mineral units and not a share in only 1,965 units, and that the contract had been breached and abandoned by defendants in failing to secure the full 3,000 units. They rely upon 15 O. S. 1941 §§ 173, 233; Hurst v. Champion, 116 Okla. 228, 244 P. 419; Clement v. Jackson Oil & Gas Co., 62 Okla. 66, 161 P. 797; Brink v. Canfield, 78 Okla. 189, 187 P. 223; and G. A. Nichols Co. v. Hainey, 190 Okla. 245, 122 P. 2d 809, 139 A.L.R. 967.

In answer to this contention, the defendants say that there is no evidence that defendants promised Wade that the full 3,000 units would be acquired or that Wade understood that the acquisition of the full 3,000 units was such a vital part of the consideration that he would not have made the conveyance without such promise; that the cases relied upon by plaintiffs involved contracts executory as to the party seeking to rescind, when the contract here was fully executed on Wade's part, or such cases are not otherwise in point; that the statements in the prospectus, above quoted, and on which plaintiffs rely,

were mere expressions of expectation or intention and not promises. They rely upon Farmers Union Co-Operative Royalty Co. v. Southward, above; 26 C. J. 1087; 6 R.C.L. 926, and Fraley v. Wilkinson, 79 Okla. 21, 191 P. 156.

We are of the opinion, and hold, that the plaintiffs are not entitled to rescind and cancel the deed for failure of consideration. As pointed out by defendants, there is no evidence justifying the inference that Wade considered the acquisition of all the 3,000 units as vital to the contract or that the defendants promised to acquire the full 3,000 units so as to make the cases of Hurst v. Champion and G. A. Nichols Co. v. Hainey, above, applicable. The record discloses that the defendants intended or expected to secure 3,000 units, but there is no showing that they promised Wade that they would do so. The contract was fully executed on Wade's part when he delivered his deed. This distinguishes the case from Clement v. Jackson Oil & Gas Co. and also Hurst v. Champion, above, relied on by plaintiffs.

There is no evidence justifying the inference that the corporation does not intend to eventually acquire the remainder of the 3,000 units so as to sustain the plaintiffs' charge of abandonment, nor do plaintiffs cite any authority holding that such abandonment, in part, of the project, if proved, would justify rescission by them. See, in this connection, 18 C.J.S. 879.

2. Under the second proposition urged by plaintiffs, they call attention to the fact that Farmers Union Company failed to properly look after its own interests, that it permitted Flag Company to manage its affairs, that stock had been issued to nonmembers of Farmers Union Company contrary to its by-laws, that some stock had been sold for cash instead of for mineral interests, that some stock had been issued for worthless titles, that some stock had been issued for mineral interests without favorable geology showings, that titles were taken without abstracts, and

that Flag Company had misappropriated money belonging to Farmers Union Company. They say that Farmers Union Company was in fact in the position of a trustee, and had been guilty of breach of trust in concealing these facts from Wade and in not informing him of them, and had consequently been guilty of fraud justifying rescission by Wade.

The plaintiffs cite no authorities sustaining the proposition that because a corporation has been mismanaged and the corporation has not informed the stockholder of such mismanagement, a stockholder can rescind the contract by which he became a stockholder, recover back the consideration paid for the stock, and thus sever his relations with the corporation, and we know of no such authority. He cites authorities holding that where a trustee obtains an advantage over a cestui que trust by use of the fiduciary relation existing between them, the one defrauded may rescind. Those authorities are not helpful. At the time the contract was entered into between Wade and the defendants, no confidential relationship existed between them, and, furthermore, the plaintiffs do not now seek to rescind on account of fraud in connection with that contract, presumably because of the decisions in Farmers Union Co-Operative Royalty Co. v. Southward, above, and other similar cases.

Wade was a stockholder of the corporation. Plaintiffs as owners of his stock and the other stockholders have the right to control its affairs, and they have their remedy if it has been mismanaged, but their remedy is not to rescind the contract by which they became stockholders for the reasons asserted by the plaintiffs. 18 C.J.S. 1152, note 90.

We conclude that the judgment appealed from is clearly against the weight of the evidence, as urged by defendants, and that it is not sustainable on any theory advanced by the plaintiffs.

In view of our decision, we need not discuss the other contentions of defendants, including those that plaintiffs are barred by limitations and laches.

Reversed, with directions to enter judgment for the defendants.